# No. 26-1564

## IN THE

## UNITED STATES COURT OF APPEALS

## FOR THE FIRST CIRCUIT

RANDALL COLLIER,

*Plaintiff-Appellant,*

v.

STATE OF NEW HAMPSHIRE, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court

for the District of New Hampshire

Case No. 1:26-cv-00226-SM-TSM

(Hon. Steven J. McAuliffe, District Judge)

# PRINCIPAL BRIEF OF APPELLANT

**Randall Collier**

*Sui Juris, Pro Se*

*United States Navy Veteran*

26 Joslin Rd

Surry, New Hampshire 03431

Phone: (603) 803-2648

Email: 042611t@gmail.com

TABLE OF CONTENTS

| | |
|---|---|
| **TABLE OF CONTENTS** | 2 |
| **TABLE OF AUTHORITIES** | 3 |
| **JURISDICTIONAL STATEMENT** | 5 |
| **STATEMENT OF THE ISSUES** | 5 |
| **STATEMENT OF THE CASE** | 7 |
| **STATEMENT OF FACTS** | 9 |
| A. The Foundational Fraud: 2012–2013 | 9 |
| B. Thirteen Years of Systematic Noncompliance: 2013–2026 | 10 |
| C. The Void Warrant and Criminal Prosecution: 2025 | 12 |
| D. The July 24, 2025 Hearing Before Judge Tessier | 13 |
| E. The Rogers Motion and WebEx Confrontation Denial | 15 |
| F. Judge Edwards, Sixth Amendment Deprivation, and the NH Supreme Court | 16 |
| G. The Legislative Record Admissions | 17 |
| H. Complete Exhaustion of State Remedies: Nine Denials | 20 |
| **SUMMARY OF ARGUMENT** | 22 |
| **ARGUMENT** | 24 |
| **I. STANDARD OF REVIEW** | 24 |
| **II. THE DISTRICT COURT FAILED TO CONDUCT DE NOVO REVIEW** | 24 |
| **III. THE PRELIMINARY INJUNCTION WAS DENIED WITHOUT ANALYSIS** | 25 |
| **IV. THIS CASE IS MATERIALLY DISTINGUISHED FROM NO. 24-1657** | 26 |
| **V. ROOKER-FELDMAN AND YOUNGER DO NOT BAR THIS ACTION** | 28 |
| **VI. THE TITLE IV-D SCHEME IS UNCONSTITUTIONAL** | 29 |
| **VII. THE RECORD DEMONSTRATES SYSTEMATIC CONSTITUTIONAL VIOLATIONS** | 30 |
| **CONCLUSION** | 33 |

## TABLE OF AUTHORITIES

### CASES
Anderson v. Bessemer City, 470 U.S. 564 (1985)
Ashcroft v. Iqbal, 556 U.S. 662 (2009)
Axon Enterprise, Inc. v. FTC, 598 U.S. 175 (2023)
Behr v. Campbell, No. 18-12842 (11th Cir. 2021)
Bell Atlantic v. Twombly, 550 U.S. 544 (2007)
Canton v. Harris, 489 U.S. 378 (1989)
Caperton v. A.T. Massey Coal, 556 U.S. 868 (2009)
Connectu LLC v. Zuckerberg, 522 F.3d 82 (1st Cir. 2008)
Davidson v. Howe, 749 F.3d 21 (1st Cir. 2014)
Erickson v. Pardus, 551 U.S. 89 (2007)
Exxon Mobil v. Saudi Basic Indus., 544 U.S. 280 (2005)
Fichtner v. Pittsley, 146 N.H. 512 (2001)
Haines v. Kerner, 404 U.S. 519 (1972)
Hernandez-Mejia v. Rivera Cruz, 926 F.3d 11 (1st Cir. 2019)
Holmberg v. Holmberg, 588 N.W.2d 720 (Minn. 1999)
Khan v. Yale University, No. 21-95 (2d Cir. 2023)
Lexecon Inc. v. Milberg Weiss, 523 U.S. 26 (1998)
Loper Bright v. Raimondo, 144 S. Ct. 2244 (2024)
Marie v. Allied Home Mortg., 402 F.3d 1 (1st Cir. 2005)
Monell v. Dep't of Social Services, 436 U.S. 658 (1978)
Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977)
Newman v. Lehman Bros., 901 F.3d 19 (1st Cir. 2018)
Norton v. Shelby County, 118 U.S. 425 (1886)
Owen v. City of Independence, 445 U.S. 622 (1980)
Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)
Peretz v. United States, 501 U.S. 923 (1991)
SEC v. Jarkesy, 603 U.S. 109 (2024)
Skinner v. Switzer, 562 U.S. 521 (2011)
Thomas v. Arn, 474 U.S. 140 (1985)
Town of Barnstable v. O'Connor, 786 F.3d 130 (1st Cir. 2015)
Troxel v. Granville, 530 U.S. 57 (2000)
Tumey v. Ohio, 273 U.S. 510 (1927)
United States v. Gonzalez-Lopez, 548 U.S. 140 (2006)
United States v. Raddatz, 447 U.S. 667 (1980)
Wheat v. United States, 486 U.S. 153 (1988)
Winter v. NRDC, 555 U.S. 7 (2008)
Zenon v. Guzman, 924 F.3d 611 (1st Cir. 2019)

### STATUTES AND RULES
28 U.S.C. § 636(b)(1)(A), (C)
28 U.S.C. § 607
28 U.S.C. § 1291
42 U.S.C. §§ 1983, 1985, 1986
42 U.S.C. § 658a
18 U.S.C. §§ 1951, 1962
Fed. R. Civ. P. 52(a), 59(e), 60(b), 65
Fed. R. App. P. 3, 4, 28
Fed. R. Evid. 201(b)

N.H. Const. Pt. II, Art. 84
N.H. Const. Art. 15
NH RSA 173-B:9
NH RSA 461-A:2
NH RSA 490-F:10, 490-F:15
NH RSA 493-A:1a
NH RSA 633:3-a
Executive Order 12549
2 C.F.R. Part 180
45 C.F.R. § 302.34

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction under 28 U.S.C. § 1291. The District Court entered its Order approving the Report and Recommendation and denying the preliminary injunction on April 30, 2026. Plaintiff-Appellant filed a timely Motion for Reconsideration under Fed. R. Civ. P. 59(e) on May 5, 2026. The District Court denied the Motion for Reconsideration on May 13, 2026. Plaintiff-Appellant filed his Notice of Appeal on May 14, 2026, within the 30-day period prescribed by Fed. R. App. P. 4(a)(1)(A). This appeal is timely.

## STATEMENT OF THE ISSUES

1. Whether the District Court failed to conduct de novo review as mandated by 28 U.S.C. § 636(b)(1)(C) when it adopted the R&R in a one-paragraph order without addressing any of Plaintiff's five specific objections.

2. Whether the District Court erred in denying the preliminary injunction without conducting any Winter v. NRDC analysis and without citing a single case, statute, or legal authority.

3. Whether the District Court erred in denying the Motion for Reconsideration with the words "endorsed motion denied" without addressing Monell liability, the federal debarment framework, the legislative record admissions, or the distinction from Collier v. Carroll, No. 24-1657 (1st Cir. 2024).

4. Whether Rooker-Feldman and Younger abstention were misapplied to Plaintiff's independent structural constitutional challenge to the Title IV-D administrative adjudication scheme under Axon Enterprise, Inc. v. FTC, 598 U.S. 175 (2023), and Skinner v. Switzer, 562 U.S. 521 (2011).

5. Whether the Title IV-D administrative adjudication scheme violates the Due Process Clause, the Seventh Amendment, and Article III separation of powers under SEC v. Jarkesy, 603 U.S. 109 (2024).

6. Whether the District Court's repeated failure to provide any legal reasoning deprived Plaintiff of due process and meaningful appellate review.

7. Whether this case is materially distinguished from Collier v. Carroll, No. 24-1657 (1st Cir. 2024), such that this Court's prior ruling does not preclude the claims raised here.

## STATEMENT OF THE CASE

This is a structural constitutional challenge to the New Hampshire Title IV-D administrative adjudication scheme, brought under 42 U.S.C. §§ 1983, 1985, 1986, and 18 U.S.C. §§ 1951, 1962 (RICO). Plaintiff does not ask this Court to review or reverse any state court order. Plaintiff challenges the structure of the Title IV-D apparatus through which New Hampshire adjudicates private parental rights, property rights, and liberty interests without Article III protections, without trial by jury, without rules of evidence, and through a tribunal that is financially incentivized by federal performance payments to maximize support collections and protective order enforcement.

Plaintiff filed the Amended Complaint on April 27, 2026, asserting six counts: (I) Deprivation of Due Process under 42 U.S.C. § 1983; (II) Deprivation of Seventh Amendment Right to Jury Trial; (III) Deprivation of First Amendment Right to Petition; (IV) Conspiracy under 42 U.S.C. § 1985(3); (V) RICO under 18 U.S.C. § 1962; and (VI) Structural Challenge to the Title IV-D Scheme. The Magistrate Judge's Report and Recommendation was prepared on April 23, 2026 — four days before the Amended Complaint was filed — and therefore addressed only the superseded original complaint.

The District Judge adopted the R&R on April 30, 2026, in a one-paragraph order without citing a single case, statute, or legal authority, without conducting de novo

review of Plaintiff's five specific objections, and without performing any Winter analysis on the preliminary injunction. The order states in its entirety: "After due consideration of the objection filed, I herewith approve the Report and Recommendation of Magistrate Judge Talesha L. Saint-Marc dated April 23, 2026, for the reasons set forth therein. The referenced state cases are remanded as recommended. The motion for preliminary injunction is denied. So Ordered."

Plaintiff filed a Motion for Reconsideration presenting Monell liability, the federal debarment framework under Executive Order 12549, the First Circuit distinction from No. 24-1657, legislative record admissions from the NH General Court, and a comprehensive structural challenge supported by two supplemental notices and a notice of supplemental authority. The District Court denied with "endorsed motion denied" on May 13, 2026 — again without addressing any argument, citing any authority, or providing any reasoning.

This appeal challenges both the April 30 Order and the May 13 denial. Plaintiff's Amended Complaint remains pending before the District Court and has not been screened on the merits.

## STATEMENT OF FACTS

### A. The Foundational Fraud: 2012–2013

Plaintiff Randall Collier is the biological father of T.C., Plaintiff is a United States Navy Veteran. Plaintiff has spent six hours with his son in thirteen years. The child is now fifteen years old.

In late 2012, three Laconia Police reports established the following undisputed facts. On November 18, 2012, police responded to the residence and found "a verbal disagreement" about Plaintiff's position on the Second Amendment; Ms. May stated "there was no physical contact" and the officer "did not observe any evidence of assault." On November 23, 2012, Ms. May confirmed "no threat or harm in any way" and police "did not view Plaintiff as a threat." On December 2, 2012, Ms. May stated Plaintiff "agreed to see a counselor" and the officer concluded: "There will be no further police assistance with this request, an emergency order of protection was not required and the situation is in process of being resolved."

Eleven days after police determined no emergency order was required, on December 13, 2012, Ms. May filed a five-page Domestic Violence Petition based on allegations of "harassment," "abuse," and "threatening" — without probable cause, without criminal prosecution, and in direct contradiction of three police reports finding no threat, no violence, and no danger.

The Family Division — a statutory court, not a constitutional court — entered a protective order based on a presumption, without rules of evidence. Referee Michael Garner admitted on the adjudicatory record (April 16, 2024 Order, p. 6) and in legislative testimony before the House Judiciary Committee (March 28, 2023) that "rules of evidence do not apply." Two medical evaluations contradicted the DV allegations. Sole custody was awarded to Ms. May "because of the Domestic Violence Protective Order" (August 30, 2013 Narrative Parenting Decree, p. 6) — a derivative determination, not an independent evaluation.

In February 2013, Ms. May's attorney, Tony Tarbell, through paralegal Debra Mayo, sent an email to Plaintiff stating: "You keep asking for her to compromise. What compromises would you like Hillary to make? She will never agree to 50/50 custody with you. What would you propose the outcome of this case to be?" This email, written before the custody determination, reveals a predetermined outcome that the court subsequently ratified — in a state where NH RSA 461-A:2 declares that "children do best when both parents have a stable and meaningful involvement in their lives" and encourages "approximately equal parenting time."

**B. Thirteen Years of Systematic Noncompliance: 2013–2026**
The protective order has been continuously extended from 2013 to 2030 — seventeen years of criminal-statute protective orders without objective evidence of criminal conduct. Since 2013, not one of Plaintiff's orders has been signed by a

justice of the assigned court as required by NH RSA 493-A:1a, which mandates that "all recommendations of judicial referees shall be approved by a justice in regular active service or senior active service" and that "a judicial referee shall not preside over jury trials and shall not enter final orders in any case." Thirteen years of systematic noncompliance with a mandatory statutory requirement.

Ms. May was permitted to relocate with the child to North Carolina in April 2015 without a justice's signature, and the distance was then weaponized to deny Plaintiff's modification request (Garner, 8/24/2017, noting "the geography would not permit a shared parenting agreement"). The system created the distance, then used it as justification.

Plaintiff was found in contempt on February 28, 2020, for a family member sending a gift to his son — conduct involving no threat, coercion, or violence. Arrest warrants were issued for failure to pay attorney fees (Belknap County 2/28/2020; Wake County NC 3/2/2022) — constituting imprisonment for debt.

The RSA 493-A:1a noncompliance is not limited to family court proceedings. In January 2026, Referee Ryan denied a Motion to Dismiss a speeding citation (Case No. 449-2025-CR-02151) without a justice's signature. Plaintiff filed an Extraordinary Writ of Mandamus in Cheshire Superior Court challenging this denial. Ryan's order stated that Plaintiff's "Due Process arguments are without merit" — the same dismissive language used throughout these proceedings. This

demonstrates that the RSA 493-A:1a violations are systemic across all case types, not isolated to family court. When a referee ignores the mandatory statutory signature requirement in traffic court with the same regularity as in family court, the noncompliance is a structural feature of the system, not an occasional error.

Ms. May stopped all telephone communication with Plaintiff approximately four years ago, in violation of her own parenting plan. Plaintiff's attempts to communicate with his son through email formed the basis of the criminal charges under which he is currently being prosecuted.

## C. The Void Warrant and Criminal Prosecution: 2025

On May 20, 2025, Trooper Paul Bergeron of the NH State Police signed a probable cause affidavit seeking an arrest warrant against Plaintiff for violation of the protective order (RSA 173-B:9). In the sworn affidavit, Bergeron included a statement from Ms. May (now Merritt) characterizing Plaintiff as a "sovereign citizen" who would "sue anyone who gets involved." Bergeron admitted under cross-examination at the July 24, 2025 hearing before Judge Tessier that including such political characterizations is not his standard practice and not regular procedure (Tr. 29). The label originated from the opposing party and was adopted by law enforcement without verification, then placed in a sworn probable cause affidavit.

The arrest warrant was signed by Magistrate Stephanie Johnson on May 20, 2025, and executed by Trooper Bergeron on May 23, 2025. On June 16, 2025, the NH Secretary of State's office confirmed by official email: "Stephanie Johnson is a Magistrate. No oath for her." N.H. Const. Pt. II, Art. 84 requires all officers to take an oath before entering upon their duties. Without the oath, Johnson was never lawfully a magistrate, and the warrant she signed is void ab initio. Norton v. Shelby County, 118 U.S. 425, 442 (1886). Magistrate Johnson has since been terminated for misconduct. Yet four criminal charges initiated under her void warrant continue against Plaintiff.

**D. The July 24, 2025 Hearing Before Judge Tessier**

On July 24, 2025, a hearing was held on the State's Motion to Revoke Bail before Judge Joseph Tessier of the 8th Circuit Court, District Division, Keene. Case No. 449-2025-CR-00776. The State was represented by Attorney Dennis Thivierge of the NH State Police. Plaintiff appeared pro se. The hearing produced a 49-page transcript. The transcript records that proceedings commenced at 8:46 a.m. and concluded at 8:46 a.m. — the same time — which is impossible for a hearing of this length and constitutes either a transcription error or an inaccuracy in the official record.

Judge Tessier denied the State's request to proceed by offers of proof and required the State to present sworn testimony subject to cross-examination, acknowledging

Plaintiff's right to confront witnesses (Tr. 6:2–8). This ruling was significant: Tessier recognized that even in a bail revocation hearing, the defendant has confrontation rights.

During cross-examination, Trooper Bergeron made the following admissions under oath: (1) he confirmed he took an oath to uphold and defend the Constitution (Tr. 13:14–16, 15:5–6); (2) his investigation "stemmed from the reported violation of a protection order" forwarded to him — he did not independently witness any criminal conduct (Tr. 18:11–15); (3) the investigation originated from Ms. Merritt "at the direction of her attorney" (Tr. 21:18–22); (4) he "did not witness" Plaintiff send any email (Tr. 24:17–18); and (5) "there were no physical injuries reported by any party in this matter" (Tr. 24:21–22).

Judge Tessier took judicial notice three times during the hearing: first, of both the federal and state constitutions (Tr. 15:10–14: "I find that the trooper has taken an oath to defend the Constitution. And I'll take note of both the federal and state constitutions. So I'll take judicial notice of those documents."); second, of the criminal statutes cited by Plaintiff (Tr. 35:21–22: "I will take judicial notice of that statute."); and third, of RSA 173-B and its placement in the criminal code (Tr. 19:16–17). Tessier engaged with Plaintiff's constitutional arguments throughout the hearing, allowed Plaintiff to present his objections over the prosecutor's

repeated objections (Tr. 15:25, 16:3), and confirmed he was "tracking" Plaintiff's arguments (Tr. 38:7–9).

Plaintiff raised the void warrant on the record: "So the revocation of the bail on the unconstitutional warrant from the judge that didn't have the — an oath on file" (Tr. 35:6–8). Plaintiff raised Garner's admission that rules of evidence do not apply (Tr. 15:17–19). Plaintiff argued the statutory mismatch: RSA 173-B is not in the New Hampshire Criminal Code Chapter 62 or U.S. Code Title 18 (Tr. 16:6–11, 19:9–10, 46:4–5). Plaintiff moved to dismiss (Tr. 25:1–6, 46:9–11).

The State's prosecutor, Thivierge, admitted on the record that Plaintiff has no criminal record: "I'm unsure if he does, Your Honor. I don't have anything that reflects that he does" (Tr. 43:5–6). Despite no criminal record, no evidence of dangerousness, and no physical injuries, Judge Tessier denied the motion to dismiss, granted the State's motion to revoke bail, and set bail at $1,000 cash (Tr. 47:6–21). Plaintiff invoked habeas corpus on the record as he was taken into custody (Tr. 48:14).

### E. The Rogers Motion and WebEx Confrontation Denial

Plaintiff hired criminal defense counsel Thomas M. Rogers, Esq., who represented Plaintiff in a subsequent trial before Referee Ryan. Rogers filed a Motion to Reconsider and Reverse Court's Finding of Guilt in Case No. 449-2025-CR-00776, documenting critical procedural deficiencies. Rogers's motion established that: (1)

at trial, the State presented only two stalking orders (Carroll, J., Feb. 4, 2013, and April 2, 2025 valid through 2030) and no other court orders (Rogers Motion ¶ 9); (2) the orders submitted by the State were issued pursuant to RSA 633:3-a (stalking), not under the authority of RSA 173-B:9, 458:16, or the laws of another State (Rogers Motion ¶ 10) — a statutory mismatch between the evidence presented and the charges filed; (3) Plaintiff made timely objections and moved to dismiss based on constitutional rights (Rogers Motion ¶ 11); and (4) Ryan found Plaintiff guilty on August 25, 2025, based on Ryan's August 13, 2025 Orders, and scheduled sentencing for October 22, 2025 (Rogers Motion ¶ 12).

Additionally, Ryan issued an Order on the State's Motion to Allow Appearance via WebEx, permitting Ms. Merritt to testify remotely from North Carolina. Plaintiff objected under N.H. Const. Art. 15, which guarantees the right "to meet the witnesses against him face to face." Ryan quoted Article 15 in full in his order but granted the WebEx motion anyway — directly denying Plaintiff's constitutional right to in-person confrontation. This violates the Sixth Amendment's Confrontation Clause.

## F. Judge Edwards, Sixth Amendment Deprivation, and the NH Supreme Court

NH Superior Court Executive Administrator Anne Edwards was assigned to Plaintiff's criminal cases (213-2025-CR-00431 and 213-2026-CR-00021). Edwards granted immunity to the NH State Police for executing the void warrant

signed by the oath-less Magistrate Johnson. Rather than addressing the constitutional defect, Edwards shielded the entire enforcement chain that executed the void warrant.

When Plaintiff filed NH Supreme Court Case No. 2026-0122 challenging these issues, Plaintiff's retained criminal defense counsel, Rogers, indicated a potential conflict of interest. Edwards disqualified Rogers during a pre-trial conference on March 4, 2026, without offering Plaintiff the opportunity to waive the conflict. Plaintiff is now unrepresented in five active criminal charges. United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006), holds that wrongful deprivation of counsel of choice is structural error requiring automatic reversal. Edwards further scheduled a conference for May 7, 2026 "in case NH Supreme Court denies your appeals" — prejudging the outcome of a pending appeal.

## G. The Legislative Record Admissions

The following admissions from the public legislative record of the State of New Hampshire, subject to judicial notice under Fed. R. Evid. 201(b), independently confirm that the Family Division is an administrative tribunal operating without constitutional authority:

(a) NH General Counsel Erin Kregan confirmed before the House Judiciary Committee on January 17, 2024, that "Circuit Courts were made by statute," not by the NH Constitution. Only the Supreme Court and

Superior Court are constitutional courts. The Family Division is a creature of statute, subject to the Jarkesy structural challenge;

(b) Referee Michael Garner testified before the House Judiciary and Family Law Committee on March 28, 2023, that "rules of evidence do not apply in Family Court" and that referees "hope to be the gatekeeper of reliable information." A public legislative admission by a named defendant that the tribunal does not operate under judicial rules of evidence;

(c) NH General Counsel Erin Kregan stated before the House Special Committee on the Family Division on April 2, 2024, that "civil court is for the plaintiff to vindicate their rights." If rules of evidence do not apply, litigants cannot vindicate their rights, and the tribunal fails its own stated purpose;

(d) NH State Representative Kutab confirmed before the House Judiciary Committee on January 17, 2024, that the Judicial Conduct Commission was found unconstitutional by the NH Supreme Court in 2011, yet remained on the books for over 20 years, "confusing litigants because it has the same initials as the Judicial Conduct Committee." The JCC itself has acknowledged it lacks jurisdiction

over administrative court judge complaints, confirming that state remedies are structurally unavailable;

(e) Retired NH Supreme Court Justice and Judiciary Chairman R. Lynn publicly stated: "you can only get a preponderance of evidence through a criminal proceeding." This admission confirms that the Family Division's burden-shifting — applying preponderance in civil proceedings that generate criminal consequences — violates fundamental due process.

The structural deficiencies documented in this appeal have been recognized by the New Hampshire Legislature itself. In 2025-2026, the New Hampshire Senate advanced multiple major family court reform bills, reflecting legislative acknowledgment that the Family Division's operations require systemic correction. This legislative action independently confirms that the structural problems Plaintiff has been challenging for thirteen years are not the product of a disgruntled litigant's imagination — they are recognized deficiencies that the State's own lawmakers have determined require legislative intervention. The fact that legislative reform is underway while the courts refuse to address the constitutional dimensions of the same problems underscores the necessity of federal judicial review.

## H. Complete Exhaustion of State Remedies: Nine Denials

Plaintiff has exhausted every available state and federal remedy through nine separate denials:

(1) NH Supreme Court 2013-0689 — denied October 16, 2013;

(2) NH Supreme Court 2014-0318 — denied April 24, 2014;

(3) NH District Court 22-cv-162 — dismissed on Rooker-Feldman, February 21, 2023;

(4) NH Supreme Court Writ of Certiorari — denied April 14, 2023;

(5) NH District Court 1:24-cv-00015-JL-AJ — dismissed on Rooker-Feldman, May 15, 2024;

(6) First Circuit No. 24-1657 — affirmed on Eleventh Amendment and judicial immunity only, December 30, 2024 (structural challenge not reached);

(7) NH District Court Habeas Corpus 1:25-cv-36 — denied April 16, 2025;

(8) NH Supreme Court 2025-0423 — denied (mandatory appeal from Superior Court);

(9) NH Supreme Court 2026-0122 — denied (Petition for Original Jurisdiction presenting void warrant, no oath, unsigned orders, structural challenge).

Every state door is closed. The Family Division denied relief. The JCC admitted it lacks jurisdiction. The Superior Court granted immunity to the enforcement chain. The NH Supreme Court denied two separate appeals presenting the constitutional issues. No court at any level has reached the merits of the structural constitutional challenge. Federal intervention under 42 U.S.C. § 1983 is the only remaining path.

## SUMMARY OF ARGUMENT

The District Court committed manifest error by adopting the Magistrate's R&R in a one-paragraph order without conducting de novo review as mandated by 28 U.S.C. § 636(b)(1)(C), and then denied reconsideration with two words without addressing any of Plaintiff's arguments. This pattern of adjudication without reasoning violates both the Federal Rules and Plaintiff's due process rights.

The R&R was prepared four days before the Amended Complaint was filed and therefore never addressed the structural constitutional challenge, the Monell framework, the RICO claims, the Doctrine of Two Contracts, or the federal debarment analysis. The Amended Complaint supersedes the original as a matter of law. Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008).

This case is materially distinguished from Collier v. Carroll, No. 24-1657 (1st Cir. 2024), in every dispositive respect: different defendants, different legal theory, different constitutional framework, different immunity analysis, and no Eleventh Amendment bar. Khan v. Yale University, No. 21-95 (2d Cir. 2023), holds that quasi-judicial immunity does not apply when the proceeding lacks procedural safeguards — which the NH Family Division lacks by its own admission.

The Title IV-D scheme violates the Seventh Amendment under Jarkesy by adjudicating private rights without jury trial; violates due process under Tumey by creating financial incentive bias; and violates Article III under Axon by operating

through a statutory administrative tribunal staffed by referees who cannot practice law, who do not apply rules of evidence, and whose orders have not been signed by a justice for thirteen years. The record documents sixty-five specific violations and nine denials across every level of the state and federal system without any court reaching the merits.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews de novo the District Court's legal conclusions, including the application of Rooker-Feldman and Younger abstention. The denial of a preliminary injunction is reviewed for abuse of discretion; a denial without any reasoned analysis is per se an abuse of discretion. Braintree Labs. v. Citigroup, 622 F.3d 36, 41 (1st Cir. 2010). The denial of a motion for reconsideration is reviewed for abuse of discretion. Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005).

## II. THE DISTRICT COURT FAILED TO CONDUCT DE NOVO REVIEW

28 U.S.C. § 636(b)(1)(C) mandates: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." "Shall" is mandatory. Lexecon Inc. v. Milberg Weiss, 523 U.S. 26, 35 (1998). Plaintiff filed five specific objections: (a) the Magistrate conflated the structural challenge with a state court appeal, misapplying Rooker-Feldman; (b) Younger abstention cannot apply to structural challenges under Axon; (c) the R&R ignored the Title IV-D federal contract framework; (d) the Magistrate recommended denial of injunctive relief without authority under § 636(b)(1)(A); and (e) Sternberg v. Warneck provided new authority. The April 30 Order addresses none of these objections.

The Supreme Court has held that de novo review after objections is constitutionally required. Thomas v. Arn, 474 U.S. 140, 154 (1985); Peretz v. United States, 501 U.S. 923, 939–40 (1991). The First Circuit requires engagement with objections on the merits. Hernandez-Mejia v. Rivera Cruz, 926 F.3d 11, 17 (1st Cir. 2019). A one-paragraph adoption is not de novo review.

The Motion for Reconsideration presented detailed arguments the Court had never addressed: Monell liability identifying the Title IV-D State Plan as formal official policy; the federal debarment framework under E.O. 12549 classifying referees as federal contractors; the material distinction from No. 24-1657; legislative record admissions from the NH General Court confirming the Family Division is a statutory, non-constitutional court; and the void warrant signed by an oath-less magistrate since terminated for misconduct. The Court responded: "endorsed motion denied." Two words. No analysis. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985), requires articulated reasoning for appellate review.

## III. THE PRELIMINARY INJUNCTION WAS DENIED WITHOUT ANALYSIS

The District Court denied the preliminary injunction without reference to the four-factor Winter test: (1) likelihood of success on the merits; (2) likelihood of irreparable harm; (3) balance of equities; (4) public interest. Winter v. NRDC, 555 U.S. 7, 20 (2008). No findings of fact and no conclusions of law were entered as required by Fed. R. Civ. P. 52(a) and 65(d).

The irreparable harm is documented and ongoing. Plaintiff has spent six hours with his son in thirteen years. The child is now fifteen. The parent-child relationship is a fundamental liberty interest. *Troxel v. Granville*, 530 U.S. 57 (2000). Every day without relief causes irreparable harm that, once lost, cannot be restored. The mother ceased all telephone communication required under her own parenting plan approximately four years ago. Plaintiff's attempts to reach his son through email resulted in criminal charges. No *Winter* analysis was conducted to weigh this documented, ongoing, irreparable harm.

Additionally, the Magistrate recommended denial of injunctive relief, but motions for injunctive relief are expressly excluded from matters a magistrate may "hear and determine" under 28 U.S.C. § 636(b)(1)(A). The Magistrate exceeded her statutory authority.

## IV. THIS CASE IS MATERIALLY DISTINGUISHED FROM NO. 24-1657

On December 30, 2024, this Court (Montecalvo, Kayatta, Rikelman, JJ.) affirmed dismissal of *Collier v. Carroll*, No. 24-1657, on two grounds: (1) the Eleventh Amendment barred claims against the JCC; and (2) judicial immunity barred claims against Carroll and Garner because they "concern solely adjudicatory actions that trigger judicial immunity." *Zenon v. Guzman*, 924 F.3d 611, 616–17 (1st Cir. 2019). This Court did not reach or decide Rooker-Feldman, the structural challenge, Monell liability, or the Title IV-D framework.

The current case is materially distinguished in five respects. First, different defendants: No. 24-1657 sued individual judges and the JCC; the current case sues governmental entities. Monell claims against governmental entities are not barred by judicial immunity. Monell, 436 U.S. at 690–91. Second, different legal theory: No. 24-1657 sought damages for adjudicatory acts; the current case challenges the official policy as the moving force behind systematic constitutional deprivation. Owen v. City of Independence, 445 U.S. 622, 650 (1980). Third, different constitutional framework: Jarkesy, Loper Bright, Axon, E.O. 12549, and 28 U.S.C. § 607 were not presented in No. 24-1657. Fourth, this Court's own language — "solely adjudicatory actions" — implicitly preserves non-adjudicatory claims, which is precisely what the Monell and debarment claims are. Fifth, municipalities do not enjoy Eleventh Amendment immunity. Mt. Healthy, 429 U.S. at 280.

Khan v. Yale University, No. 21-95 (2d Cir. 2023), provides persuasive authority from a sister circuit that proceedings lacking procedural safeguards do not qualify for quasi-judicial immunity. The NH Family Division lacks those safeguards by its own admission. Under Khan, the participants cannot claim the protections of a judicial proceeding when the proceeding itself lacks the characteristics that define judicial action.

## V. ROOKER-FELDMAN AND YOUNGER DO NOT BAR THIS ACTION

Plaintiff does not ask any court to review or reverse a state court order. This is an independent structural challenge to the Title IV-D apparatus itself. Axon Enterprise, 598 U.S. at 190–91, holds that structural challenges go directly to federal court without exhaustion. Skinner v. Switzer, 562 U.S. 521, 532 (2011), holds that Rooker-Feldman does not bar independent constitutional claims. Exxon Mobil v. Saudi Basic Indus., 544 U.S. 280, 284 (2005), confines Rooker-Feldman to its narrow origin. Behr v. Campbell, No. 18-12842 (11th Cir. 2021), requires district courts to analyze each claim individually rather than sweeping all claims with a single-paragraph dismissal — the exact error the District Court committed here.

Younger abstention requires adequate state remedies. Plaintiff has exhausted every available remedy through nine separate denials across every level of the state and federal system. The NH Supreme Court denied two petitions (2025-0423 and 2026-0122) that presented the void warrant, the no-oath magistrate, the unsigned orders, and the structural challenge. The JCC admitted it lacks jurisdiction over administrative court judge complaints. The state system is not merely inadequate — it is incapable of self-correction. This is precisely the situation where federal intervention under § 1983 is not only appropriate but necessary.

## VI. THE TITLE IV-D SCHEME IS UNCONSTITUTIONAL

SEC v. Jarkesy, 603 U.S. 109 (2024), holds that private rights cannot be adjudicated without Article III protections and jury trial. The NH Family Division adjudicates custody, support, and protective orders — all involving private property and liberty rights — without jury trial, without rules of evidence, and through referees who cannot practice law (RSA 490-F:10). Justice Gorsuch's concurrence warned: "We don't usually say the government can avoid a constitutional mandate merely by relabeling or moving things around." New Hampshire did exactly that.

The Title IV-D State Plan (March 15, 2023) creates structural financial bias through 42 U.S.C. § 658a, which ties performance incentive payments to collection volumes and enforcement rates. The State receives 66% federal reimbursement on administrative costs plus performance incentive payments. The tribunal profits from adverse judgments. Tumey v. Ohio, 273 U.S. 510 (1927); Caperton v. Massey Coal, 556 U.S. 868 (2009). Sister-state supreme courts ruled identical schemes unconstitutional. Holmberg v. Holmberg, 588 N.W.2d 720 (Minn. 1999). New Hampshire continued operating in deliberate indifference.

Executive Order 12549, codified at 2 C.F.R. Part 180, classifies Title IV-D participants as federal program contractors. 28 U.S.C. § 607 prohibits simultaneously holding judicial office and serving as a federal contractor. 45 C.F.R.

§ 302.34 requires separation of adjudicative and administrative functions. Every NH referee who adjudicates Title IV-D cases while operating under the cooperative agreement violates federal law. The federal government's own regulatory framework treats them as contractors, not independent judicial officers.

The Monell claim is established by the Title IV-D State Plan as the formal, officially adopted policy causing systematic constitutional deprivation. Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986). When a formally adopted policy directly causes a constitutional violation, liability attaches without additional pattern showing. Here, both the formal policy and thirteen years of pattern are documented.

## VII. THE RECORD DEMONSTRATES SYSTEMATIC CONSTITUTIONAL VIOLATIONS

The record before this Court documents sixty-five identified violations of federal rules, state statutes, and constitutional provisions, organized into five categories: (1) fifteen violations of the Federal Rules of Civil Procedure, including two failures of de novo review and denial of the preliminary injunction without Winter analysis; (2) seven violations of constitutional rights in the federal proceedings; (3) ten violations of NH state procedural and statutory requirements, including thirteen years of orders unsigned per RSA 493-A:1a; (4) eight violations of criminal procedure and Sixth Amendment rights, including the void warrant, the denied right to counsel of choice, and the denied right to confrontation; and (5) eleven

structural and systemic violations, including the Title IV-D financial bias, the incompatible offices under 28 U.S.C. § 607, and the complete exhaustion of state remedies through nine denials.

The July 24, 2025 hearing transcript alone contains multiple admissions that independently support Plaintiff's claims: the trooper witnessed no crime, no injuries existed, the investigation originated from the opposing party through her attorney, and the prosecutor confirmed Plaintiff has no criminal record. Judge Tessier took judicial notice of the constitutions and statutes three times, engaged with Plaintiff's constitutional arguments throughout, and then ruled against Plaintiff anyway — imposing $1,000 cash bail on a person with no criminal record and no evidence of dangerousness. The transcript contains a timestamp error recording the same start and end time for a 49-page hearing.

Attorney Rogers's Motion to Reconsider documented that the State presented evidence under RSA 633:3-a (stalking) but charged Plaintiff under RSA 173-B:9 (protective order violation) — a statutory mismatch between the evidence and the charges. Rogers documented that Referee Ryan found Plaintiff guilty on August 25, 2025, based on Ryan's August 13, 2025 Orders on Motions and Findings After Trial. Separately, Plaintiff has documented in his NH Supreme Court petition (Case No. 2026-0122) and in filings before this Court that Ryan's orders were entered without the justice's signature required by NH RSA 493-A:1a, rendering them

void. Additionally, Ryan permitted Ms. Merritt to testify via WebEx over Plaintiff's constitutional objection under N.H. Const. Art. 15, denying Plaintiff's right to meet witnesses face to face.

This structural challenge is not unique to New Hampshire. An identical Title IV-D constitutional challenge is currently pending in the Middle District of Pennsylvania (Shultz v. Franklin County, Case No. 2024-3359), where a pro se plaintiff has documented the same structural defects in Pennsylvania's Title IV-D cooperative agreement: the same Doctrine of Two Contracts, the same financial bias under 42 U.S.C. § 658a, the same incompatible offices under 28 U.S.C. § 607, the same false debarment certifications under E.O. 12549, and the same systematic denial of constitutional protections. The parallel litigation across two circuits demonstrates that the Title IV-D structural challenge is a question of national importance affecting every state that operates a Title IV-D program — which is all fifty states. This Court's resolution of the constitutional questions presented here will have implications far beyond New Hampshire.

This record is not a collection of isolated incidents. It is a thirteen-year pattern of systematic constitutional violations, documented at every turn, challenged through every available remedy, and denied at every level. No court has reached the merits. This Court has the opportunity — and the obligation — to be the first.

**CONCLUSION**

For the foregoing reasons, Plaintiff-Appellant Randall Collier respectfully requests that this Court:

(a) VACATE the April 30, 2026 Order and the May 13, 2026 denial of the Motion for Reconsideration;

(b) REMAND to the District Court with instructions to conduct de novo review per 28 U.S.C. § 636(b)(1)(C) with specific findings on each of Plaintiff's objections;

(c) REMAND with instructions to conduct an independent Winter analysis on the preliminary injunction;

(d) REMAND with instructions to screen the pending Amended Complaint on its own merits, independent of the R&R that addressed only the superseded original complaint;

(e) HOLD that this case is materially distinguished from Collier v. Carroll, No. 24-1657, and that the structural constitutional challenge may proceed;

(f) HOLD that Rooker-Feldman and Younger abstention do not bar Plaintiff's independent federal claims;

(g) GRANT such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ RANDALL COLLIER    DATE: July 27 2026

Randall Collier
*Sui Juris, Pro Se*
*United States Navy Veteran*
26 Joslin Rd
Surry, New Hampshire 03431
Phone: (603) 803-2648
Email: 042611t@gmail.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief contains 6772 words, excluding the parts exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6), prepared in 14-point Times New Roman.

/s/ RANDALL COLLIER    DATE: July 27 2026

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, the foregoing PRINCIPAL BRIEF OF APPELLANT was served by the Clerk of the District Court on all parties pursuant to Fed. R. App. P. 3(d), and/or by first-class United States Mail to parties not registered for electronic service.

/s/ RANDALL COLLIER   DATE: July 27 2026

# ADDENDUM

Pursuant to 1st Cir. R. 28.0, this Addendum contains copies of each judgment, decision, ruling, or order appealed from.

## ADDENDUM TABLE OF CONTENTS

A-1. Order of District Court dated April 30, 2026
(Approving R&R, Denying Preliminary Injunction)

A-2. Order of District Court dated May 13, 2026
(Denying Motion for Reconsideration)

A-3. Report and Recommendation of Magistrate Judge Saint-Marc
dated April 23, 2026

A-4. Email from NH Secretary of State's Office dated June 16, 2025
(Confirming Magistrate Johnson had no oath on file)

A-5. Probable Cause Affidavit of Trooper Paul Bergeron
dated May 20, 2025

A-6. Arrest Warrant signed by Magistrate Stephanie Johnson
dated May 20, 2025

A-7. Hearing Transcript, July 24, 2025 (49 pages)
Before Judge Joseph Tessier

A-8. Order on Bail Revocation, Judge Tessier
dated September 5, 2025

A-9. Rogers Motion to Reconsider and Reverse Finding of Guilt

A-10. Order on State's Motion to Allow WebEx Appearance
(Confrontation denial)

Filed: ⟍4, 27 ⟍, 2026

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Randall Collier

      v.

                                    Case No. 26-cv-226-SM

NH, State of


ORDER

After due consideration of the objection filed, I herewith approve the Report and Recommendation of Magistrate Judge Talesha L. Saint-Marc dated April 23, 2026, for the reasons set forth therein. The referenced state cases are remanded as recommended. The motion for preliminary injunction is denied.

**So Ordered.**

Steven J. McAuliffe
United States District Judge

Date: April 30, 2026

cc:   Randall Collier, pro se

 **Gmail**

Randy Collier <042611t@gmail.com>

# Summary of ECF Activity

**ecf_bounce@nhd.uscourts.gov** <ecf_bounce@nhd.uscourts.gov>                    Wed, May 13, 2026 at 12:00 AM
To: nef@nhd.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

**\*\*\* NOTE TO PUBLIC ACCESS USERS \*\*\***
**This Daily Summary Report may contain documents for which one or more of the following policies apply:**

**Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**There is no charge for viewing opinions.**

**Activity has occurred in the following cases:**

**1:26-cv-00226-SM-TSM Collier v. NH, State of**
**Notice (Other)** 13

**Docket Text:**
NOTICE of ERRATA re: [11] Motion for Reconsideration, [12] Notice of Supplemental Authority by Randall Collier.(lw)

**1:26-cv-00226-SM-TSM Collier v. NH, State of**
**Order on Motion for Reconsideration** ( No document attached )

**Docket Text:**
ENDORSED ORDER denying [11] Motion for Reconsideration. *Text of Order: Denied.* So Ordered by Judge Steven J. McAuliffe.(lw)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

RANDALL COLLIER

v.                                                    Case No. 26-cv-226-SM-TSM

STATE OF NEW HAMPSHIRE[1]

### REPORT AND RECOMMENDATION

Before the court is pro se litigant Randall Collier's initial filing and an addendum to that filing (Doc. Nos. 1, 1-1), both entitled, "Notice of Removal." Appearing here in forma pauperis, Collier seeks to remove his state court cases and to obtain injunctive relief relating to those matters. Collier's "Notice of Removal" is before this court for preliminary review under 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2). Also before this court is Collier's motion "to issue an immediate injunction and protective order against all State of New Hampshire actors, agents, law enforcement, circuit court referees, [and] executive administrators" (Doc. No. 4). The district judge referred that motion to the magistrate judge for a Report and Recommendation. Apr. 20, 2026 Order.

For the foregoing reasons, removal jurisdiction is absent, and a summary remand of each state case is warranted. The Rooker-Feldman doctrine and Younger abstention doctrine provide additional grounds for the district judge to deny Collier's motion for a preliminary injunction (Doc. No. 4). The Order issued on this date grants Collier thirty days to file an "Amended Complaint"

---

[1] The last page of Collier's "Notice of Removal" lists entities and people who appear to be participants in his state cases including the courts themselves. Those listed are: the N.H. Circuit Court, 4th Circuit, Family Division-Laconia; N.H. Circuit Court, 8th Circuit, Family Division-Keene and District Division-Keene; N.H. Superior Court, Cheshire County; New Hampshire Supreme Court ("NHSC"); Hillary May; Tarbell and Brodich P.A.; Attorney Duncan A. Edgar, N.H. Attorney General's Office; Attorney Dennis J. Thiverge, N.H. State Police; Attorney Kimberly A. Kossick, Cheshire County Attorney's Office; and Attorney Thomas M. Rogers. It is unclear whether Collier intends to name any of those people and entities as defendants here.

(not a removal notice), naming each party he intends to sue as a defendant in a federal civil rights action, if any, and stating the facts upon which he asserts federal claims for relief as well as the nature of the relief sought. This court may subject that Amended Complaint to further preliminary review, as appropriate, and for that reason, this R&R, if approved, will not end this case.

## BACKGROUND

Collier's state cases relate to child custody, child support, domestic violence, and protective orders. He is the defendant in state criminal cases involving charges that he violated a protective order. The Notice of Removal (Doc. No. 1) lists Collier's state proceedings, in which he is the defendant or respondent, as well as cases in which he is the petitioner or plaintiff.[2]

---

[2] The following is Collier's list of proceedings to be removed or enjoined, sorted by case type:

**New Hampshire Supreme Court Cases:**

- Collier v. 4th Cir. Ct. Fam. Div., No. 2025-0423 (N.H.) (Collier's appeal of Collier v. 4th Cir. Ct. Fam. Div., No. 213-2025-cv-00077 (N.H. Super., Cheshire Cty.));

- Petition of Collier, No. 2026-0122 (N.H.) (Collier's Rule 11 Petition for original jurisdiction seeking review of matters in State v. Collier, No. 213-2025-cr-00431 (N.H. Super., Cheshire Cty.); State v. Collier, No. 213-2026-cr-00021 (N.H. Super., Cheshire Cty.); State v. Collier, No. 449-2025-cr-00776 (N.H. Cir. Ct., 8th Cir., Dist. Div.-Keene); State v. Collier, No. 449-2025-cr-01147 (N.H. Cir. Ct., 8th Cir., Dist. Div.-Keene); In re State, May & Collier, No. 649-2025-dm-00255 (N.H. Cir. Ct., 8th Cir., Family Div.-Keene)).

**Proceedings in N.H. Circuit Courts, District and Family Divisions:**

- In the Matter of State, May & Collier, No. 649-2025-dm-00255 (N.H. Cir. Ct., 8th Cir., Family Div.-Keene);

- In the Matter of May & Collier, No. 650-2013-dm-00010 (N.H. Cir. Ct., 4th Cir., Family Div.- Laconia);

- In the Matter of May & Collier, No. 650-2013-dv-00016 (N.H. Cir. Ct., 4th Cir., Dist. Div.-Laconia).

2

Collier has been an active litigant in federal court relating to the same matters. He filed three prior federal court cases in the District of New Hampshire seeking to enjoin or challenge state court orders issued in related state family court proceedings. Those cases were dismissed for lack of jurisdiction and the immunity of the state judges, courts, and other defendants. See Collier v. N.H. Cir. Ct., Fam. Div., No. 25-cv-036-SE-TSM, 2025 U.S. Dist. LEXIS 73260 (D.N.H. Mar. 24, 2025) (ECF No. 5), R&R approved, 2025 U.S. Dist. LEXIS 72762 (D.N.H. Apr. 16, 2025) (ECF No. 8) (dismissed for lack of jurisdiction); Collier v. Carrol, No. 24-cv-015-JL-AJ, 2024 WL 3239637, 2024 U.S. Dist. LEXIS 117733 (D.N.H. May 15, 2024) (ECF No. 13), R&R approved, 2024 WL 3226483, 2024 U.S. Dist. LEXIS 114028 (D.N.H., June 24, 2024) (ECF No. 16) (dismissed for lack of jurisdiction), aff'd, No. 24-1657 (1st Cir. Dec. 30, 2024) (affirmed on basis of Eleventh Amendment and judicial immunity); Jan. 31, 2023 Order, Collier v. Carrol, No. 22-cv-00162-LM (D.N.H.) (ECF No. 22) (dismissed based on Rooker-Feldman doctrine).

Collier presents similar claims here in a different way. He seeks to remove his state cases to this court for further proceedings or equitable relief. His Notice of Removal summarizes his reasons for seeking removal, as follows:

> Removal is necessitated by the following systemic failures within the New Hampshire state court system: conflicted judicial testimonies; conflicting state statutes; criminal statutes deployed in civil litigation without supporting evidence; evidentiary rules that are selectively ignored; and the demonstrated ability of state

---

**Criminal Matters in N.H. Superior Court or District Division Courts:**

- State v. Collier, No. 213-2025-cr-00431 (N.H. Super., Cheshire Cty.) (appeal of State v. Collier, No. 449-2025-cr-00776 (N.H. Cir. Ct., 8th Cir., Dist. Div.-Keene);

- State v. Collier, No. 213-2026-cr-00021 (N.H. Super., Cheshire Cty.) (appeal of State v. Collier, No. 449-2025-cr-01147 (N.H. Cir. Ct., 8th Cir., Dist. Div.-Keene).

judicial officers to waive any procedural rule at any time, rendering constitutional protections illusory.

Notice of Removal (Doc. No. 1) at pg. 4.

## LEGAL STANDARD

### I.    Preliminary Review

This court screens the initial filings of plaintiffs and removal defendants who appear in federal court without prepaying the filing fee under LR 4.3(d) and 28 U.S.C. § 1915(e)(2). The court may dismiss claims or cases sua sponte if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief might be granted, or the action is frivolous or malicious. See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2). This court construes Collier's pleadings liberally as they appear to have been prepared without a lawyer's assistance. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

### II.    Screening of Removal Notices

Civil state cases removed to federal court may be summarily remanded for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). Plazzi v. FedEx Ground Package Sys., Inc., 52 F.4th 1, 7–8 (1st Cir. 2022).

> In any case removed from a state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

Id. (citing 28 U.S.C. § 1447(c)).

State criminal defendants may remove pending state prosecutions to federal court in very limited circumstances, as defined by federal statutes. Whenever a state criminal defendant files a notice of removal, 28 U.S.C. § 1455(b)(4) specifically requires the federal court to examine the notice promptly and to remand summarily where the removal documents show that removal is not

4

proper:

> If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

Id. "The filing of a notice of removal of a criminal prosecution shall not prevent the State Court . . . from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded." Id. § 1455(b)(3).

In general, the party "seeking to remove a case to the federal court has the burden of demonstrating the existence of federal jurisdiction," and "removal jurisdiction is strictly construed against" the removing party. Massachusetts v. Azubuko, 616 F. Supp. 2d 174, 175 (D. Mass. 2009) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–109 (1941)); BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of Am., 132 F.3d 824, 831 (1st Cir.1997)).

### III.    Preliminary Injunction Standard

A party seeking preliminary injunctive relief must establish that "'he is likely to succeed on the .merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 576 U.S. 863, 876 (2015) (citation omitted). The likelihood of success and irreparable harm are factors that weigh most heavily in the analysis. See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).

### DISCUSSION

### I.    Screening of Collier's Removal Notices for Jurisdictional Issues

#### A.    Removal under 28 U.S.C. § 1443

Collier cites 28 U.S.C. § 1443 as the statute authorizing the removal of his state

proceedings. That statute provides, as follows:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
>
> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443(1), (2).

"[R]emoval statute[s] should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action." Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. AstraZeneca PLC (In re Pharm. Indus. Average Wholesale Price Litig.), 431 F. Supp. 2d 109, 116 (D. Mass. 2006). To remove a criminal prosecution under § 1443(1), the Supreme Court has held that the state court defendant must demonstrate both of the following: (1) "that the right allegedly denied . . . arises under a federal law providing for specific civil rights stated in terms of racial equality," and (2) that the "specified federal rights" are denied or cannot be enforced "in the courts of [the] State." Johnson v. Mississippi, 421 U.S. 213, 219 (1975) (internal quotation marks and citations omitted).

Collier's claims do not bring his state proceedings within the scope of removal jurisdiction under § 1443(1), which is limited to cases involving alleged violations of federal rights stated in terms of racial equality. Collier seeks removal because of what he considers to be systemic failures in the New Hampshire state courts. He does not allege, however, that such systemic failures subject him to racial discrimination; his claims are based on rights that are generally applicable, which do not provide grounds for removing a case to federal court under § 1443(1). Johnson, 421

6

U.S. at 219 (citing City of Greenwood v. Peacock, 384 U.S. 808, 825 (1966)); see also Peltier v. Peltier, 548 F.2d 1083, 1083-84 & n.2 (1st Cir. 1977) (per curiam) (alleged sex discrimination in divorce proceedings did not authorize removal under § 1443(1)). Collier's reliance on federal laws or rights of general applicability and his failure to allege any unlawful race discrimination in his state proceedings are patent deficiencies in his removal notices that warrant a summary remand, to the extent removal is based on § 1443(1).[3]

Section 1443(2) also fails to provide removal jurisdiction over Collier's cases. Section 1443(2) "confers a privilege of removal only upon federal officers or agents and those authorized

---

[3] The federal rights stated in Collier's Notice of Removal include the Seventh Amendment and the Fifth Amendment and Fourteenth Amendment rights to due process, which are not proper bases for removal under § 1443(1). See Johnson, 421 U.S. at 219 (due process violations do not provide grounds for removal under § 1443(1)); State Farm Mut. Auto. Ins. Co. v. Baasch, 644 F.2d 94, 97 (2d Cir. 1981) (alleged violation of Seventh Amendment does not meet "limited criteria for invoking the civil rights removal statute"). His reference to the Equal Protection Clause in his Notice of Removal, in the absence of allegations of racial discrimination, also fails to provide grounds for removal under § 1443(1). See Alabama v. Conley, 245 F.3d 1292, 1295-96 (11th Cir. 2001) ("broad assertions of violations of rights" under Equal Protection Clause or 42 U.S.C. § 1983 are insufficient to support removal). Collier's citations to the Declaration of Independence; the separation of powers; the system of checks and balances, Article III, and the Supremacy Clause in Article IV of the U.S. Constitution are similarly unavailing. See Cent. Mortg. Co. v. Laskos, 561 F. App'x 827, 829 (11th Cir. 2014) (Supremacy Clause); Coleman v. Mississippi, No. 3:25-cv-663-KHJ-MTP, 2025 WL 3899503, 2025 U.S. Dist. LEXIS 269516, at *4 (S.D. Miss. Dec. 17, 2025), R&R approved, 2026 WL 39303, at *1, 2026 U.S. Dist. LEXIS 1405, at *1 (S.D. Miss. Jan. 6, 2026) ("neither Article III, Section 2 of the United States Constitution, nor any of the federal statutes Coleman cites support this Court's [removal] jurisdiction over Coleman's [state criminal] case"); United States v. Leggett, No. 8:25-cv-2456-KKM-AEP, 2025 U.S. Dist. LEXIS 211815, at *2-3 (M.D. Fla. Oct. 28, 2025) (separation of powers); Socal Fund 1, LLC v. Jimenez-Ortiz, No. CV 12-4678 PSG (JCx), 2012 U.S. Dist. LEXIS 77418, at *2-3 (C.D. Cal. Jun. 1, 2012) (Declaration of Independence). Collier's passing reference to 18 U.S.C. § 242, in the context of arguing why there should be no absolute immunity for judges, also fails to satisfy the first prong of § 1443(1); that federal criminal law does not create a private right of action, see Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989), and fails to support removal under § 1443(1) in the absence of any allegations of race discrimination. See Port Austin v. Stapleton, 628 F. Supp. 3d 702, 705 (E.D. Mich. 2022); Florida v. Cave, No. 19-61830-CIV, 2019 WL 3302571, at *1, 2019 U.S. Dist. LEXIS 122645, at *2-3 (S.D. Fla. July 23, 2019).

to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." Peacock, 384 U.S. at 824. Collier's Notice of Removal does not allege that he is a federal agent, state official, or other authorized person prosecuted for executing such duties. Id. & n.22. A summary remand of Collier's state prosecutions and civil cases is warranted, as removal jurisdiction is lacking under the federal removal statutes he cites.

### B. Removal under 28 U.S.C. § 1441(a)

Collier's citation to federal laws in his Notice of Removal further suggests an intent to remove his state civil cases under 28 U.S.C. § 1441(a), which allows a state court defendant to remove a pending state civil proceeding to federal court if the federal court would have original jurisdiction over the matter. 28 U.S.C. § 1441(a). It is the removing defendant's burden to show that removal is proper. See Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008); see also Acosta–Ramírez v. Banco Popular de P.R., 712 F.3d 14, 20 (1st Cir. 2013).

Collier's filings, construed liberally, seek to invoke federal question jurisdiction under 28 U.S.C. § 1331 as grounds for removal. Under § 1331, district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Id.

> To determine whether the claim [in a state case] arises under federal law, [federal courts] examine the "well pleaded" allegations of the [state court] complaint and ignore potential defenses: "[A] suit arises under the Constitution and laws of the United States only when the [state court] plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.

Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 6 (2003). In general, defendants cannot remove a plaintiff's state law claims to federal court based on any federal counterclaim or federal defense, including defenses anticipated in the state court plaintiff's pleadings. See, e.g., Vaden v. Discover Bank, 556 U.S. 49, 54 (2009); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392-93 (1987).

Turning to each of the state civil cases and NHSC matters Collier seeks to remove, this

8

court notes that Collier is the state court plaintiff in Collier v. 4th Cir. Ct. Fam. Div., No. 2025-0423 (N.H.). As Collier is not the defendant in that case, he plainly cannot establish any grounds for removal under § 1441(a). Cf. Home Depot U.S.A., Inc. v. Jackson, 587 U.S. 435, 442 (2019) ("the phrase 'the defendant or the defendants' in § 1441(a)" does not include third-party counterclaim defendants). Accordingly, a summary remand of that case is warranted.

Collier lists another NHSC case by docket number, Petition of Collier, No. 2026-0122 (N.H.), which is his Rule 11 petition seeking to invoke the NHSC's original jurisdiction under N.H. Sup. Ct. R. 11. The NHSC denied that Rule 11 petition on March 24, 2026. Even if Collier were not barred from removing that case simply by virtue of his identity as the NHSC petitioner, he could not remove that proceeding here for reasons stated elsewhere in this Report and Recommendation; the same criminal matters, family court proceedings, and state district court cases underlying that unsuccessful Rule 11 Petition are separately listed in his "Notice of Removal" here (Doc. No. 1). For reasons stated in this Report and Recommendation with respect to the absence of removal jurisdiction as to any of those underlying matters, Collier's attempt to remove his Rule 11 Petition is also unauthorized by any federal law. Accordingly, a summary remand of Case No. 2026-0122 is warranted for lack of removal jurisdiction.

The remaining state cases listed in Collier's Notice of Removal are family court matters involving child support, child custody, and a 2013 domestic violence/protective order proceeding. The claims in those cases appear to be based on state laws. See, e.g., RSA 173-B (domestic violence protective orders), 457 to 461-A (domestic relations, including child custody, child support, and enforcement). Collier has the burden of showing the existence of removal jurisdiction, and he has not filed any copies of any pleadings in those matters or otherwise demonstrated that the complaints initiating those proceedings assert federal claims. See Peltier,

9

548 F.2d at 1083 n.2 (no federal statutes appear to provide for removal jurisdiction over state law divorce proceeding). As this court lacks grounds for concluding that the state court plaintiff's claims in those cases involve federal issues that could provide grounds for removal, a summary remand is warranted.

## II. Preliminary Injunction

### A. Injunctive Relief to Effect Removal

Collier moves for injunctive relief (Doc. No. 4) to give effect to his notices of removal and to prevent the state courts from taking further action in the cases listed in his notice of removal. Because this court lacks removal jurisdiction over his claims, Collier has failed to make the requisite showing of a likelihood of success on the merits of any of his claims. Accordingly, the district judge should deny Collier's motion for preliminary injunctive relief (Doc. No. 4).

### B. Younger Abstention

To the extent Collier seeks other forms of equitable relief in this case, including a request that this court: declare that state court orders are void or voidable, enjoin the criminal prosecutions currently pending in Cheshire County Superior Court and his child support enforcement proceedings, and prevent the enforcement of any other state court orders to which he alludes in Document Nos. 1, 1-1, and 4, his requests are unavailing. Under Younger v. Harris, 401 U.S. 37 (1971), federal courts must abstain from enjoining certain types of proceedings in state court, absent extraordinary circumstances. Younger abstention applies in three types of state proceedings: ongoing "(i) criminal prosecutions, (ii) 'civil proceedings that are akin to criminal prosecutions,' and (iii) proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" Sirva Relocation, LLC v. Richie, 794 F.3d 185, 192 (1st Cir. 2015).

10

(quoting Sprint Comm., Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013)). "Abstention is appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Rossi v. Gemma, 489 F.3d 26, 34-35 (1st Cir. 2007). When Younger applies, abstention is mandatory, and the federal court is deprived of any discretion to grant injunctive relief. See Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 816 n.22 (1976).

The Younger abstention doctrine squarely applies to Collier's criminal cases pending in Cheshire County Superior Court, to the ongoing child support enforcement proceedings where he is the target, and to any contempt proceedings or similar actions taken by the state judges to ensure compliance with court orders. See Sobel v. Prudenti, 25 F. Supp. 3d 340, 355 (E.D.N.Y. 2014) (court abstained under Younger in case where parent claimed that rulings in state child support case violated rights to due process); Rogers v. N.H. Circuit Court, No. 16-cv-107-JL, 2016 WL 3919414, at *2, 2016 U.S. Dist. LEXIS 93961, at *4-7 (D.N.H. Jun. 3, 2016) (court abstained under Younger where parent claimed violations of due process rights in New Hampshire family court proceedings), R&R adopted, 2016 WL 3920169, 2016 U.S. Dist. LEXIS 93957 (D.N.H. July 18, 2016); see also Tahai v. Stanfill, No. 2:26-cv-00057-LEW, 2026 WL 1020634, at *1-2, 2026 U.S. Dist. LEXIS 82154, at *2 (D. Me. Apr. 15, 2026) (R&R) (Younger abstention applied where parent claimed that delays in state child custody proceedings deprived him of parental rights, and parent sought declaratory judgment stating that the delay violated due process as well as injunctions forcing state court to implement procedural safeguards).

The few extraordinary circumstances involving such cases where abstention is not required include state prosecutions brought in bad faith for purposes of harassment, cases in which the state

11

forum provides inadequate protection of federal rights, and cases where the statute at issue is "'flagrantly and patently violative of express constitutional prohibitions.'" Sirva Relocation, 794 F.3d at 192 (citations omitted). Nothing in the record here suggests any bad faith or harassment, or inadequacy of the state forums (including the New Hampshire Supreme Court) for assertion of Collier's federal claims, or any other extraordinary circumstances here, which could exempt his requests for equitable relief from abstention under Younger. See generally Moore v. Sims, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern," and Court in that case was "unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation."). Plaintiff here has an adequate opportunity in the state courts to raise his federal claims, including his claims of due process violations and violations of other federal constitutional provisions, and he can seek further review of adverse orders in the NHSC and through a petition for certiorari review as appropriate. See Rogers, 2016 WL 3919414, at *2, 2016 U.S. Dist. LEXIS 93961, at *7 ("family court has inherent power to control its proceedings and to issue orders for the purpose of ensuring that all parties have a full and fair opportunity to advance claims and defenses" (citing In re O'Neil, 159 N.H. 615, 622, 992 A.2d 672, 677 (2010))). Evidence that the state courts have dismissed Collier's claims or denied his motions is not proof that the state proceedings are inadequate to protect his federal rights. "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for Younger purposes." Hansel v. Town Court, 56 F.3d 391, 394 (2d Cir. 1995).

> The fact that state . . . courts may reject (or have rejected) arguments on the merits . . . does not mean those courts have deprived a plaintiff of the opportunity to make the argument. And, it is only where, for procedural or other reasons, the state courts

> deprive the plaintiff of such an <u>opportunity</u> that <u>Younger</u> does not apply. A party . . . may appeal its claim through the state system, eventually asking the United States Supreme Court to review the federal question that it believes the state erroneously decided; or, such a party, seeking a federal forum, may file its federal action before the state proceeding begins. But, that party, already engaged in a state proceeding, cannot ordinarily obtain a hearing in federal court on its federal claim simply because it believes the state will reject the claim on the merits.

<u>Duty Free Shop, Inc. v. Admin. de Terrenos</u>, 889 F.2d 1181, 1183 (1st Cir. 1989) (citations omitted and emphasis in original). Collier has failed to make the necessary showing of extraordinary circumstances that could allow this court to retain jurisdiction over his injunctive and declaratory relief claims at issue, rendering those claims the proper subject of <u>Younger</u> abstention.

### C. <i>Rooker-Feldman</i> and 4th Circuit Family Court Claims

Not all the state proceedings Collier seeks to enjoin were pending before he filed this case. Collier filed this case after the NHSC affirmed the dismissal of Collier's Superior Court case against the 4th Circuit family court in Laconia, <u>see</u> <u>Collier v. 4th Cir. Ct. Fam. Div.</u>, No. 2025-0423 (N.H. Mar. 24, 2026) (affirming dismissal of <u>Collier v. 4th Cir. Ct., Fam. Div.</u>, No. 213-2025-cv-00077 (N.H. Super. Ct., Cheshire Cty.)). In addition, Collier's domestic relations case litigated in family court in Laconia, underlying those proceedings, is also a closed case, <u>see</u> <u>In the Matter of May & Collier</u>, No. 650-2013-dm-00010 (N.H. Cir. Ct., 4th Cir., Family Div.- Laconia). That those cases were closed and the subject of state court judgments at the time he filed this case suggests an independent jurisdictional ground for denying relief, arising from the statutory authority of the U.S. Supreme Court, not this court, to review federal issues implicated by final judgments of the NHSC.

The <u>Rooker-Feldman</u> doctrine "prohibits federal [district] courts from adjudicating cases brought by state-court losing parties challenging state-court judgments" seeking federal district

13

court review and reversal of the state court judgment, Reed v. Goertz, 598 U.S. 230, 235 (2023). Rooker-Feldman does not preclude parties from reviewing independent federal claims, such as a challenge to the constitutionality of the state law that provides the rule of decision in the state cases. See Skinner v. Switzer, 562 U.S. 521, 532 (2011). Collier, however, does not appear to be asserting any independent claim that he did not already raise in the state court cases, and he plainly seeks to challenge collaterally and enjoin orders issued by the state courts. To the extent Collier seeks this court's review and reversal of the orders dismissing his claims in the Laconia family court cases, Collier's claims for relief here are barred by the Rooker-Feldman doctrine, and, accordingly, Collier may not obtain injunctive relief on those claims.

### III. **Preliminary Review of Claims Asserted by Collier**

Collier filed this case by filing a removal notice. He did not name defendants to his federal claims; rather, he listed all of the state courts, attorneys, and other participants in his state court cases as parties or entities who would receive notice of his removal documents. His decision not to structure his claims here in the form of a civil complaint naming specific defendants complicates this court's ability to subject his pleadings to preliminary review under LR 4.3(d) and 28 U.S.C. § 1915(e)(2). Accordingly, in the Order issued on this date, the court grants Collier thirty days to file an "Amended Complaint" (not a removal notice), naming each party he intends to sue as a defendant, if any, and stating the facts upon which he claims relief as well as the nature of the relief sought. This court may subject that Amended Complaint to preliminary review, as appropriate.

### CONCLUSION

For the foregoing reasons, the magistrate judge recommends as follows:

(1)    The district judge should issue an Order of Remand, remanding

14

Collier's state cases listed in his Notice of Removal (Doc. Nos. 1, 1-1) to the State courts, pursuant to 28 U.S.C. § 1447(c) and 28 U.S.C. § 1455(b)(4), and then the Clerk's Office of this Court must mail a certified copy of that Order of Remand to the Clerks of: the N.H. Supreme Court; the Cheshire County Superior Court; the N.H. Circuit Court, 8th Circuit, District Division-Keene and Family Division-Keene; and the N.H. Circuit Court, 4th Circuit, Family Division-Laconia; and

(2)     The district judge should deny Collier's motion for a preliminary injunction (Doc. No. 4).

(3)     Because the Order issued on the date of this Report and Recommendation provides Collier an opportunity to file an Amended Complaint, approval of this Report and Recommendation will not terminate this case, unless otherwise ordered by this court.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Talesha L. Saint-Marc
United States Magistrate Judge

April 23, 2026

cc:     Randall Collier, pro se

15

 Gmail

Randy Collier <042611t@gmail.com>

## requesting more Oaths of judges

**Alejandro Smith** <Alejandro.Smith@sos.nh.gov>                    Mon, Jun 16, 2025 at 1:55 PM
To: Randy Collier <042611t@gmail.com>

The oath for Anne Edwards is attached.

Stephanie Johnson is a Magistrate. No oath for her.

Oaths for NH State Police Officers are not filed with the Secretary of State's office.

[Quoted text hidden]

 **Edwards Parker, Anne M..pdf**
42K

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
https://www.courts.nh.gov

## PROBABLE CAUSE STATEMENT FOR ARREST WARRANT

I, __Tr Paul Bergeron__ _____ declare under penalty of perjury:
(Name of officer)

1. I am employed by and my current assignment and experience is:

   I am employed by the Department of Safety, Division of State Police, as a Uniformed Patrol Trooper assigned to Troop-C-Cheshire County. I am a graduate of the 189th New Hampshire State Police standards and Training full time academy. In the academy, I was trained in criminal code, motor vehicle code, and domestic violence. Prior to my employment with the State Police, I received a bachelor's degree in criminal justice and a minor in psychology.

   (Describe position, assignment, office, etc.)

2. I have information, based upon (Describe source, facts indicating reliability and credibility of source and nature of information. If based on personal knowledge, so state).

   **Please see attached narrative**

☑ See additional page(s) for more information

For these reasons I ask the Court to issue an arrest warrant for
Name __Randall Collier__ _____ DOB: __06/14/1975__

For the following crimes:

RSA: __173-B:9__    Descriptor: __Violation of protection order__

RSA: _____    Descriptor: _____

RSA: _____    Descriptor: _____

RSA: _____    Descriptor: _____

RSA: _____    Descriptor: _____

__5/20/2025__
Date

Signature of Officer

__Tr Paul Bergeron__
Name of Officer

_Signed under the penalty of perjury, the penalty for which may include a fine or imprisonment or both._

NHJB-2330-DS (11/01/2021)

# SUPPORTING AFFIDAVIT OF PROBABLE CAUSE

## STATE OF NEW HAMPSHIRE

**CHESHIRE,SS.**

**May 20, 2025**

I, Trooper Paul Bergeron, being duly sworn, depose and say:

1. I am employed by the Department of Safety, Division of State Police, as a Uniformed Patrol Trooper assigned to Troop-C-Cheshire County. I am a graduate of the 189th New Hampshire State Police standards and Training full time academy. In the academy, I was trained in criminal code, motor vehicle code, and domestic violence. Prior to my employment with the State Police, I received a bachelor's degree in criminal justice and a minor in psychology.

2. The following facts are based on my personal knowledge and observations through investigative interviews and evidence gained.

3. On 3/4/2025 at approximately 1000 hours, **Lt. Sean Eaton (NHSP-Troop C)** requested that I begin an investigation into a reported violation of a protection order. Lt. Eaton provided me with a brief summary regarding an email received by Troop C from a **Hillary MERRITT (DOB: 1/22/1978)**.

4. MERRITT stated that Randall Collier has violated the protection order numerous times. MERRITT provided attachments sent by COLLIER's email "042611t@gmail.com". I identified COLLLIER through previous State Police contacts and with a copy of the protection order as **Randall COLLIER (DOB: 06/14/1975)**.

5. MERRITT forwarded copies of the emails she received from COLLIER to the Troop C email account. I noted the listed Gmail address from the sender was "Randy Collier <042611t@gmail.com>". I further observed that MERRITT's attorney Friedrich MOECKEL was attached on the email chains.

6. On 3/9/2025 at approximately 1330 hours, I spoke with MERRITT on the phone regarding the reported violation. MERRITT stated that she and COLLIER were never married, but they share a child together. MERRITT stated that she has been residing in North Carolina for approximately 10 years. MERRITT has reported additional incidents to Cary PD. I observed an arrest warrant for COLLIER out of NC, however it was non-extraditable. MERRITT stated COLLIER has violated the protection order hundreds of times through emails, calls, texts, and other social media. MERRITT stated COLLIER is currently residing in the Town of Surry, NH. MERRITT stated that COLLIER identifies as a "sovereign citizen" and will "sue anyone who gets involved". MERRITT further

stated that COLLIER has refused to recognize the court's authority in issuing the order. MERRITT further described instances where COLLIER has sent emails to her and cc'd her attorney.

7. I observed the protection order was originally granted on 2/4/2013 and had been since extended most recently on 2/22/2025 by the Hon. Laura Lombardi. The order is currently set to expire on 2/28/2030. As part of the order, the defendant (COLLIER) **"shall not have any contact with the plaintiff, whether in person or through third persons, including but not limited to contact by telephone, letters, fax, e-mail, the sending or delivery of gifts or any other method unless specifically authorized by the court. The defendant is prohibited from coming within 100 yards of the plaintiff"**.

8. **Tr. Troy Couillard and Tr. Andrew Vautrin (NHSP-Troop C)** served COLLIER the extension of the signed protection order on 2/25/2025 at 1155 hours at his residence (26 Joslin Rd. Surry, NH). I reviewed the emails forwarded by MERRITT and observed the most recent email from "Randy Collier <042611t@gmail.com>" was sent to MERRITT on 3/3/2025 at 0800. I observed multiple emails sent by "Randy Collier <042611t@gmail.com>" to both MERRITT, to her Attorney, and to both of them, and a number of these emails are of personal grievances regarding the custody of COLLIER and MERRITT's child in common. I noted a signed copy of a certificate of service for a "Motion to Attach Plaintiff's Affidavit" was forwarded on 2/4/2020 by MERRITT's legal counsel Eaton W. Tarbell Jr to COLLIER by email at 042611t@gmail.com.

9. On 3/12/2025 at approximately 0900 hours, I briefed my supervisor **Sgt. Jason Yarosz (NHSP-Troop C)** on the investigation. Sgt. Yarosz stated that he had a prior police encounter with COLLIER on 4/22/2024, when COLLIER came to Troop C to request that the State Police investigate New Hampshire District Courts Judges for judicial misconduct. COLLIER went to both the Cheshire County Sherrif's Office and the Keene Police Department with the same complaint before coming to the barracks. During that contact, Sgt. Yarosz referred COLLIER to the NH AG's Office but as a courtesy, he provided his wok email to COLLIER in case he had legal questions pertaining to laws that the State Police have the jurisdiction or authorly to investigate. Sgt. Yarosz has since received over 80 emails from "Randy Collier <042611t@gmail.com>" and most of the emails contain attachments. Sgt. Yarosz does not read these emails, and they all get sent to a spam folder because under the NH DOS IT cyber security policy, the email address is flagged as containing unknown or unsolicited attachments and it is a violation of policy to open them. The headlines of these emails usually reference the government or judicial systems.

10. On 3/13/2025 I applied and was granted a search warrant for the above listed Gmail account. On 3/14/2025 the search warrant was submitted to Google through the LERS portal by **Tr. Matthew Poddell (NHSP-SIU)**. On 3/18/2025, I submitted the return of service for the signed search warrant pending the receipt of the requested information

11. On 4/23/2025 at approximately 1235 hours, I spoke with MERRITT on the phone. MERRITT stated that she had a recent hearing regarding the review of the protection order in Laconia Family Court. MERRITT stated that COLLIER had filed paperwork through the court electronically with the above listed email address. MERRITT forwarded the attachment to my State Police email address. The email contained a photo of the E-filing by COLLIER on 4/22/2025 at 1013 hours in Cheshire Superior Court. The photograph attachment displayed the case number, case title, status, and COLLIER's name in the receipt.

12. Based on the foregoing information, I believed there was probable cause to arrest COLLIER for Violation of Protection Order.

Accordingly, I respectfully seek the issuance of an arrest warrant for Randall COLLIER (DOB: 06/14/1975)

Based Upon the Forgoing, there is Probable Cause to believe that Randall COLLIER committed the offense of

## NH RSA 173-B:9 Violation of Protective Order

Signed Under the Penalty of Perjury, the penalty for which may include a fine or imprisonment, or both

05/20/2025

Trooper Paul J. Bergeron #1375

New Hampshire State Police

Troop C

Page 3 of 3

# THE STATE OF NEW HAMPSHIRE
## COMPLAINT

Case Number: **449·2025·CR·00776**          Charge ID: **2325252C**

SIN# NSP03002500028820001

| ☐ VIOLATION | MISDEMEANOR | ☒ CLASS A | ☐ CLASS B | ☐ UNCLASSIFIED(non-person) |
|---|---|---|---|---|
| | FELONY | ☐ CLASS A   ☐ CLASS B   ☐ SPECIAL | | ☐ UNCLASSIFIED(non-person) |

You are to appear at the: 8TH CIRCUIT - DISTRICT DIVISION - KEENE          Court,

Address: 33 WINTER STREET, SUITE 1, KEENE, NH 03431          County: CHESHIRE

Time:  01:00 PM          Date: 05/23/2025

Under penalty of law to answer to a complaint charging you with the following offense:

THE UNDERSIGNED COMPLAINS THAT: PLEASE PRINT

| COLLIER | RANDALL | | |
|---|---|---|---|
| Last Name | First Name | | Middle |
| 26 JOSLIN RD | SURRY | NH | 03431-8206 |
| Address | City | State | Zip |
| MALE | WHITE | 510 | 185 | BLU | BLOND |
| Sex | Race | Height | Weight | Eye Color | Hair Color |
| 06/14/1975 | 06CRR75141 | NH | |
| DOB | License #: | OP License State | |

☐COMM.VEH.          ☐COMM.DR.LIC.          ☐HAZ.MAT.          ☐16+PASSENGER

AT:  26 JOSLIN RD, SURRY, NH 03431

On 03/04/2025 at 01:00 PM in CHESHIRE County NH, did commit the offense of:

RSA Name:          VIOLATION OF PROTECTIVE ORDER

Contrary to RSA:          173-B:9

Inchoate:

(Sentence Enhancer):

And the laws of New Hampshire for which the defendant should be held to answer, in that the defendant did:

knowingly violate a protective order issued by 4th District-Laconia Court on 02/21/2013 and having continuously extended currently set to expire on 2/28/2030 by contacting the protected party, Hillary Merritt by electronic means,

against the peace and dignity of the State.

☐ SERVED IN HAND

*Paul Bergeron III*          TR. PAUL BERGERON          NEW HAMPSHIRE STATE POLICE - TROOP C

Complaint Signature          Complainant Printed Name          Complainant Dept.

**Making a false statement on this complaint may result in criminal prosecution.**

Oath below not required for police officers unless complaint charges class A misdemeanor or felony (RSA 594-A:7.1). Personally appeared the above named complainant and made oath that the above complaint by him/her subscribed is, in his/her belief, true.

**5|23|25**

Date          Clerk of Court/Deputy Clerk/Justice of Peace/Notarial Officer

NHJB-2962-D (10/02/2023)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
https://www.courts.nh.gov

Court Name: **8th Circuit - District Division - Keene**     Agency Case Number: **2025-028820**

## ARREST WARRANT

To the sheriff of his deputies of any county in this state, or any police officer state or federal, within the state:

**Tr Paul Bergeron** _____ has established under oath that probable cause exists and an arrest warrant shall issue against the defendant,

**Randall Collier** _____, D.O.B. **06/14/1975** _____,

In the county of **Cheshire** _____ for one count of

**Violation of protection order** _____ contrary to the New Hampshire

RSA: **173-B:9** ___ Descriptor: **Violation of protection order** _____

RSA: _____ Descriptor: _____

RSA: _____ Descriptor: _____

RSA: _____ Descriptor: _____

RSA: _____ Descriptor: _____

We command you to take him/her, if found to be in your jurisdiction, and bring him/her before the **8th Circuit - District Division - Keene** _____ Court.

_____05/20/2025_____
Date

_Signature_
Signature of Judge / Justice of the Peace / Magistrate

Stephanie J. Johnson
Name of Judge / Justice of the Peace / Magistrate

## RETURN

STATE OF NEW HAMPSHIRE     COUNTY OF ___Cheshire___

I have arrested the Defendant and now have him/her before the court as commanded.

5/23/2025
Date

_Signature_
Signature of Officer

Tr. Paul Bergeron  NHSP-Troop C
Name of Officer/Department

Did trooper investigate facts in contrast to his duty to perform his contract?

1

STATE OF NEW HAMPSHIRE

8TH CIRCUIT COURT - DISTRICT DIVISION - KEENE

| STATE OF NEW HAMPSHIRE, | ) District Division Case No. |
|---|---|
| Complainant, | ) 449-2025-CR-00776 |
| | ) |
| | ) Keene, New Hampshire |
| vs. | ) July 24, 2025 |
| | ) 8:46 a.m. |
| RANDALL COLLIER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

HEARING ON MOTION TO REVOKE BAIL
BEFORE THE HONORABLE JOSEPH TESSIER
JUDGE OF THE CIRCUIT COURT - DISTRICT DIVISION

APPEARANCES:

For the State:        Dennis Thivierge, Esq.
                      NEW HAMPSHIRE STATE POLICE
                      TROOP C
                      15 Ash Brook Court
                      Keene, NH 03431

Pro Se Defendant:     Randall Collier

Audio Operator:       Electronically Recorded
                      **Not Monitored**

TRANSCRIPTION COMPANY:   eScribers, LLC
                         7227 N. 16th Street, Suite 207
                         Phoenix, AZ 85020
                         (800) 257-0885
                         www.escribers.net

Proceedings recorded by electronic sound recording; transcript
produced by court-approved transcription service.



I N D E X

| WITNESS(ES) | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| For the State: | | | | |
| Paul Bergeron | 8 | 13 | 25 | 26 |

| MISCELLANEOUS | PAGE |
|---|---|
| STATE RESTS | 29 |
| DEFENDANT'S CLOSING ARGUMENT | 34 |
| STATE'S CLOSING ARGUMENT | 40 |
| DEFENDANT'S REBUTTAL ARGUMENT | 43 |
| COURT'S RULING | 47 |

| EXHIBITS | | ID | EVD |
|---|---|---|---|
| State's 1 | Email | | 11 |



(Proceedings commence at 8:46 a.m.)

THE CLERK: State v. Randall Collier.

THE COURT: Okay. State v. Randall Collier. I have two dockets. Let's see. I have 449-2025-CR-00776. It is a violation of protective order. It's a motion to revoke bail that was submitted by the State. I also have a new docket, 449-2025-CR-01147, that I believe the Defendant has not been arraigned on. Hang on one moment.

I have here an advance notice for recording for today.

And any objection by the State?

MR. THIVIERGE: I'm sorry, for what?

THE COURT: Any objection to the request to record this hearing?

Sir, do you have, like, a -- are you recording it? Or someone's recording it?

Yeah.

UNIDENTIFIED SPEAKER: Your Honor, I am recording.

THE COURT: I got you. Understood.

Any objection from the State?

MR. THIVIERGE: No, Your Honor.

THE COURT: All right.

I've approved it, sir.

UNIDENTIFIED SPEAKER: Thank you, Your Honor.

THE COURT: Yeah. Thank you.

All right. And can all parties please identify themselves for the record, starting with the State?

Counsel?

MR. THIVIERGE: Good morning, Your Honor. Dennis Thivierge for State, out of Troop C barracks.

THE COURT: Thank you.

And sir, can you identify yourself?

MR. COLLIER: Randall. Just Randall.

THE COURT: Okay.

MR. COLLIER: I'm not a corporate straw man. All caps name. I am a sovereign living man.

THE COURT: May I address you as Randall?

MR. COLLIER: Yes.

THE COURT: All right. My name is Judge Tessier.

And how are we proceeding today, Counsel?

Oh, one moment, and then I'll hear from you, okay?

MR. THIVIERGE: Your Honor, if you would, would you allow -- I'd like to proceed by offers of proof. But I can certainly have a trooper testify, if that's your preference.

THE COURT: Okay. All right.

So Randall, the State has filed a motion to revoke bail. Are you aware of that pleading that was filed?

MR. COLLIER: I am aware of the unconstitutional pleading. I am also aware that you have an oath to the Constitution. I have to ask you now, are you a member of the



state bar association? Furthermore, that's not a constitutional flag. That's an administrative flag. So that needs to go. So I invoke common law jurisdiction in the statutory court.

THE COURT: Okay.

MR. COLLIER: I do not agree consent to be tried under inferior statutes that are inferior to the U.S. Constitution.

THE COURT: All right.

MR. COLLIER: All these officers, prosecutors, and you, if you decide to do this, are violating Article 1, Section 10 of the Constitution. You guys are all on a contract to support and defend the Constitution. So they're going to charge my information. The State is going to try and prosecute me. They're -- they're -- they can't be a witness. There's no accuser. It's an iredible (phonetic) presumption of guilt. That's in the Black Law's (sic) dictionary. So this is a capricious proceeding. There's no opportunity to rebut the truth, because the action -- if there was three elements to a crime -- injured party, you know, mens rea, actus rea, then actually, the mother would be here to accuse me and not the State. So the State didn't witness anything. They can't shift the burden of proof. That's not a constitutional court. I can go on.

THE COURT: All right. So I'm going to hold you



right there. What I'm going to take is that you object to the State proceeding by offers of proof. I agree the State has to put on witnesses capable of being cross-examination -- cross-examined. So you do have a right to confront the witnesses in a bail revocation hearing. So I do find that this Court has jurisdiction, and I am going to proceed with the bail revocation hearing, but I am going to require the State to put on witnesses and not just make an offer of proof.

When the State's witness testifies, you will have an opportunity to question those witnesses if you want to. After the State presents its case, you'll have an opportunity to testify and make any arguments.

MR. COLLIER: This isn't a constitutional court.

THE COURT: Sir --

MR. COLLIER: If you're going to upright -- if you're going to uphold my constitutional protections as a veteran, this is -- you're going to invoke common law jurisdiction, get rid of that flag, and we're going to have the victim testify. The troopers cannot testify. They are not a witness to a crime. This is not a criminal court. You already got immunity through the Supreme Court in my 1983 case for deprivation of rights, and when I asked what applied to the criminal statutes, I got nothing but immunity. Unconstitutional immunity. I said if rules of evidence didn't apply the protective order, what did apply? All you

unconstitutional judges got immunity.

So there can't be a crime if there was no elements of the crime in an unconstitutional statutory executive branch hearing. You got no jurisdiction to enter any orders against me.

THE COURT: I note your objection. I do find jurisdiction, and we're going to proceed. You can have a seat, sir, or you can stand.

State, you can call your first witness.

MR. COLLIER: On what grounds are you calling jurisdiction?

THE COURT: Sir?

MR. COLLIER: On what constitutional grounds with a -- with a agency flag?

THE COURT: We are proceeding with this hearing. Thank you.

Go ahead, counsel.

MR. THIVIERGE: Thank you, Your Honor. I would call Tpr. Paul Bergeron to the stand.

THE COURT: Trooper, if you want to come on up and just remain standing.

TPR. BERGERON: Yes, sir.

THE COURT: Trooper, just raise your right hand.

PAUL BERGERON, WITNESS FOR THE STATE, SWORN

THE COURT: Please have a seat.



Can you please state and spell your name for the record?

THE WITNESS: Absolutely, Your Honor. Paul J. Bergeron, B-E-R-G-E-R-O-N.

THE COURT: Okay. Tpr. Bergeron, the prosecutor is going to have some questions for you. Afterwards, Randall is going to have an opportunity to ask you questions.

Counsel, your witness.

MR. THIVIERGE: Thank you, Your Honor.

DIRECT EXAMINATION

BY MR. THIVIERGE:

Q You're aware of the motion to revoke --

A I am.

Q -- in this matter; is that correct?

A Yes, sir.

Q And are you aware that it was -- in that motion recited a -- excuse me -- a July 2 -- excuse me -- 2025 email from Mr. Collier to a protective party?

A Yes, sir.

Q You are. And how did you become aware of that email?

A That email was forwarded to my work email by Hillary Merritt, formerly Hillary May, referencing an email sent to her email as well as her attorney's email, by Randall Collier.

Q Okay. Now, there's a recent bail order out of this Court; is that correct?



A   Yes, sir.

Q   And do you know the date of that?

A   That was 5/23, sir.

Q   And Ms. -- was Hillary protected -- the protected party under that --

A   Yes.

Q   -- as part of that?

A   Yes, she is.

Q   Are you aware of any other protective orders?

A   Outside of the mail order, I'm aware of the original protection order that was initiated approximately 13 years ago.

Q   Okay.  And by the original, by that you mean -- is that a criminal bail order?  Or is that a civil domestic violence protection order?

A   That was the civil order, sir.

Q   Okay.  Do you know if that one from roughly 13 years ago has expired?

A   It is still active.

Q   And do you know for how long it's active?

A   I would have to site my original report, but my memory says -- I believe it was through 2030, sir.

Q   So there are two -- she's protected under two orders at this point, is how you understand?

A   Yes, she is.



Q  Okay.

MR. THIVIERGE:  If I may approach, Your Honor?

THE COURT:  And what are you approaching with?

MR. THIVIERGE:  The witness list.

THE COURT:  Okay.  And I'm going to ask you to show Randall anything that you're showing the witness.

MR. THIVIERGE:  I will.

MR. COLLIER:  Oh, yeah, why the judges want immunity?  That's right.  They're good.

MR. THIVIERGE:  That's cool.

THE COURT:  Okay.  You can approach the witness.

BY MR. THIVIERGE:

Q  Can you identify that -- excuse me -- document?

A  I can.  This was the email forwarded to me by Hillary on July 7th.  This was sent to her on the date listed here, July 2nd.  It was sent to her email as well as her attorney's email.  And she was directed to forward it to my email for reference for this case, sir.

MR. THIVIERGE:  Your Honor, I would offer this.

THE COURT:  All right.  The State is looking to admit this as an exhibit in this bail revocation hearing. Randall, do you have an objection to the exhibit?

MR. COLLIER:  Yes.

THE COURT:  And nature of objection?

MR. COLLIER:  Not signed by the party.  Not signed



by the prosecutor. Still haven't seen your bar card, and I haven't seen the prosecutor's bar card yet for Foreign Agent Registration Act. So no, I don't accept that.

THE COURT: Okay.

And response from the State?

MR. THIVIERGE: Your Honor, no one signs -- most people don't sign their emails. Certainly I wouldn't sign it. And whether or not he's seen my bar card is irrelevant to the issue before the Court.

MR. COLLIER: It's not an affidavit of truth. There's no signed documentation of an affidavit from the notary. So it's irrelevant.

THE COURT: Okay.

MR. COLLIER: This is not a court of law.

THE COURT: All right.

MR. COLLIER: This is a court of equity.

THE COURT: I'm going to stop you right there, Randall.

I am going to admit it as an exhibit, as 1. But Randall, I take your point that it is not an affidavit, so I'm going to give it the appropriate weight. So objection is overruled. State's 1.

(State's Exhibit 1 received)

MR. THIVIERGE: Thank you, Your Honor.

BY MR. THIVIERGE:

eScribers

Q Now, this is the only -- this email is the only one that we mentioned in our motion. I want to ask you, are you aware of any other emails from Mr. -- excuse me -- Collier while -- to Hillary while she was under the protection of her restraining order, which apparently has been since 2013-ish?

A I am. There were numerous emails sent to that email address stemming all the way back multiple -- at least in the last calendar year. And then since the bail order has been issued on the 23rd of May, there's been approximately five emails that I am directly aware of that were forwarded to my work email address. I've been alerted that there were many more sent. I have not received those copies from her to this point, but I do have multiple emails sent to my work email from her, sir.

Q So between the ones that were sent to you, forwarded to you by Hillary, and any that were forwarded to you by her attorney, how many would you say there were?

A If you're talking about after the bail order was issued, I would say there's at least five that I can confirm up here right now. Altogether, I would have to count stemming back from the beginning of this investigation, sir.

MR. THIVIERGE: I have nothing further for this witness, Your Honor.

THE COURT: At this point in time, Randall, you have an opportunity to ask questions. Just questions at this time.



Later on in the hearing, if you want to make statements, I'll allow you to do that. But just questions for the trooper.

MR. COLLIER: Questions for trooper.

THE COURT: Yeah.

MR. COLLIER: Oh. He's going to answer for this one.

THE COURT: Well, just ask questions. Just looking for the facts.

CROSS-EXAMINATION

BY MR. COLLIER:

Q All right, Tpr. Bergeron. Are you employed by the State of New Hampshire as a state police trooper?

A I am, sir.

Q You are. Did you take an oath to the Constitution to defend the Constitution?

A I did, sir.

Q You did, sir. Do you have any idea what Article 1, section 10 of the Constitution says?

A I would have to reference that. I'm assuming you have the document right there.

THE COURT: All right. So stop, then give it to the court officer. The court officer can --

BY MR. COLLIER:

Q You're under contract --

THE COURT: Wait. Hold on. We're going to do the

process.

MR. COLLIER: Okay.

THE COURT: I'm going to show the prosecutor what you intend to show the witness, and then I'm going to have the court officer bring it to the witness.

Okay.

THE WITNESS: Thank you, sir.

THE COURT: And Randall, can you direct him to the provision you're talking about?

BY MR. COLLIER:

Q Article 1, section 10. It's highlighted for you. Please read the highlighted sections.

A Just for clarification, sir, do you want me to read the highlighted only or the portions in between the highlighted? Because there's --

Q You can -- you can read it all. But -- but the -- the highlighted portion is what this constitutional judge needs to hear in this unconstitutional tribunal. So just -- just what does Article 1, section 10 of the Constitution say?

A So according to this sheet, Article 1, Section 10, Clause 1, the highlighted portion begins with: No state shall enter into any treaty, alliance, or confederation; grant leaders -- grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder; ex



post facto law, or law impairing the obligation of contracts, or grant any title of nobility.

Q Would you agree that you are under contract to uphold and defend the United States of the Constitution?

A I took an oath to uphold and defend the Constitution of the United States of America.

MR. COLLIER: Let the -- let the record reflect on this court of not regular, not law, that this trooper just testified that he took an oath to defend the Constitution.

THE COURT: So Randall, so I'm going to render a decision on that. I find that the trooper has taken an oath to defend the Constitution. And I'll take note of both the federal and state constitutions. So I'll take judicial notice of those documents. Continue.

MR. COLLIER: Okay.

BY MR. COLLIER:

Q Judge Gardner, on the 4/24 order that he wrote for the protective order, he said: Rules of evidence do not apply to the protective order. So if this isn't a -- isn't a criminal court, and New Hampshire RSA 173, which is the protection order, is not in New Hampshire Criminal Code Chapter 62 or U.S. Code Title 18. However, it is in Title 42, which is a nonpositive --

MR. THIVIERGE: Your Honor, I'm going to object.

THE COURT: Let him finish the question, and then

eScribers

I'll hear you on the objection.

MR. THIVIERGE: Okay.

THE COURT: Finish your question.

MR. THIVIERGE: Okay. Thank you, Your Honor.

BY MR. COLLIER:

Q 173 is actually in Title 42, which is a nonpositive law title, which means there's no actual evidence, and I have the ability to rebut that. So if you're saying that there was probable cause of a crime, but the statute that I violated isn't in the New Hampshire crime book, how would it be a crime to violate something that's not a crime?

THE COURT: Randall, stop.

Trooper, stop.

And objection?

MR. THIVIERGE: I'm going to object, Your Honor. One, it's irrelevant to the issue before the Court today, I believe, as I was unable to tie Mr. Collier's objection that he filed to this issue at all. In fact, he didn't -- he called it an objection, but never objected or even addressed the allegation.

THE COURT: All right.

MR. THIVIERGE: So I'm going to object on the basis of relevance. And I believe it's asking for an opinion from the trooper --

THE COURT: Okay.



MR. THIVIERGE: -- that's way beyond -- no offense -- way beyond his can.

THE COURT: I'm going to stop.

And Randall, response to that response?

MR. COLLIER: He's supposed to know the law. That's what he signed a duty to.

And if you're going to object to that, I want to see your -- your bar card, because now you're a foreign agent. So you're trying to usurp the United States Constitution by a trooper violating the Constitution by a statute that's not in the crime book.

THE COURT: Randall?

MR. COLLIER: It's very relevant.

THE COURT: Randall?

MR. COLLIER: Because this isn't a constitutional court.

THE COURT: You just want to let me know, so.

MR. COLLIER: Sorry.

THE COURT: Okay. All right. So --

MR. COLLIER: Sorry. This is -- this is my 30th time being in front of the executive branch, so.

THE COURT: Okay. All right. So let me stop you right there. That calls for a legal conclusion. So I'm going to -- I'm going to sustain the objection. You can ask this trooper fact questions, what he saw, heard, stuff like that.



In terms of legal conclusions, I'm going to defer that. So when you give your presentation, you can say, hey, this is the law; this is how it doesn't fit; this is why there's no jurisdiction. But I'm going to limit you to fact questions because it's a fact witness. And we'll save your legal arguments for when you present, okay? So continue.

BY MR. COLLIER:

Q Mr. Bergeron, if you're a fact witness, what crime did you witness me committing?

THE COURT: Okay.

A So my investigation stemmed from the reported violation of a protection order that was granted, the subsequent emails, as well as messages that were sent to me. And then the arrest warrant that I drafted and had signed for your arrest at the time, sir.

BY MR. COLLIER:

Q So this arrest warrant that you had signed by the judge -- wait a minute. The Secretary of State said Stephanie Johnson didn't have an oath on file, which violates 92.2, which is a state statute, and Article 2, Section 84 of the New Hampshire Constitution. So how did you have a magistrate sign an arrest warrant without a state seal and without an actual crime and without a victim?

THE COURT: Right. So Randall, I'm going to stop you right there. That'll be a legal argument that I'll take



note of, and I'll hear from you after. But just no legal conclusions from the trooper. So save that one.

MR. COLLIER: I thought I was asking the question. Wouldn't that be a conclusion to his question? It's kind of the same thing.

THE COURT: Can you rephrase it? It kind of went on for some time. So can you shorten it up?

BY MR. COLLIER:

Q So New Hampshire RSA 173, is it or is it not in New Hampshire Criminal Code?

MR. THIVIERGE: I'm going to object on that.

THE COURT: And so --

MR. THIVIERGE: It's not relevant. Relevance. And once again, it's not a quiz of the officer's knowledge of the statutes.

THE COURT: All right. So Randall I'm going to take judicial notice that 173-B is in the criminal code, okay?

MR. COLLIER: Not in the New Hampshire Criminal Code Chapter 62.

THE COURT: All right. So here --

MR. COLLIER: 625 and 651, it's not.

THE COURT: So here's what you can do. Make the legal arguments, the legal findings that you want me to make, make those when you make your argument. This is what the -- ask him about questions about his investigation if you want.



If you want to make legal arguments about why things don't fit or there's no jurisdiction or no authority, save it for when I give you that moment to do so. But here's your opportunity to ask questions about this trooper's investigation. The facts under the investigation. So continue.

BY MR. COLLIER:

Q Trooper, how many elements of a crime are there?

THE COURT: All right. So Randall, again, that's a legal -- actually, strike that.

Go ahead.

Trooper, what are the elements for --

THE COURT: What are you -- what crime are you asking about, sir?

MR. COLLIER: I'm asking about the crime that's not in the crime book, New Hampshire RSA 173-B, that y'all got immunity for.

THE COURT: So sir, I have before me is a revocation of bail.

MR. COLLIER: Right. But the bail was based on the -- on the unlawful arrest from the unconstitutional judge without a -- without an oath on fire, which violates both state statute and state constitution. 173-B is not in U.S. Code Title 18, or again, it's not in the New Hampshire Criminal Code. And again, this Court still has not ruled on what proper jurisdiction you actually think you have with an


escribers

administrative flight here.

THE COURT: All right. So I'm going to stop you right there, Randal. And you're only going to ask questions about his investigation. Arguments about law, we're going to save it for when this witness is done. So go ahead. Questions about his investigation.

BY MR. COLLIER:

Q Do you believe that this party, the mother, is an actual victim?

THE COURT: Go ahead, Trooper.

A I can only attest to the facts and circumstances that were reported to me by her and the elements of the protection order that she referenced, sir.

BY MR. COLLIER:

Q So what you're telling me is you can't tell me the three elements of a crime that I committed, in this noncriminal court? Is that what you're telling me?

A Again, I would -- I would redirect you to my prior statement that my investigation stemmed from the report of the violation of the protection order that was issued, her being the reporting party, at the direction of her attorney to reach out to State Police Troop C. Which, the investigation was forwarded to me, and the subsequent arrest warrant was drafted based on the facts of the case, sir.

Q Was the arrest warrant drafted by a judge who didn't



have an oath or affirmation to support the Constitution?

THE COURT: Hold.

So Randall, that issue about the underlying warrant and its validity, I'm going to have you give you an opportunity to make a legal argument about that. This is just on the facts about violating the bail conditions. You can make the arguments about undertacking -- attacking the underlying reasoning and authorities. But for this witness, it's just facts based on what he investigated. So ask your next question.

BY MR. COLLIER:

Q Trooper, do you believe that you violated the United States Constitution by arresting me on this unconstitutional executive branch statute?

THE COURT: You can answer that.

THE WITNESS: Thank you, Your Honor.

A I believe that I conducted an investigation based on the reported violation. I looked at the facts and circumstances provided to me, which I reflected in the arrest warrant, which was granted, and then issued -- or executed the arrest warrant on yourself, sir.

*Did you look at Constit facts?*

BY MR. COLLIER:

Q So when you arrested me and you -- and you gave me my Miranda rights, and you took my left hand, and Ellis took my right hand, and you read me Mirandas, and I asked for the



affidavit -- the signed affidavit from the injured party, I never got it?

THE COURT: Is that a question, sir?

MR. COLLIER: Yeah.

BY MR. COLLIER:

Q Why didn't I ever get the signed affidavit from the injured party? That actually goes with the warrant.

A Okay. Well, sir, first I would like to point out that Tpr. Ellis was not part of the arrest that day. That was myself and Tpr. Jonathan Delisle. Secondly, we took you into custody. We -- just like I explained to you, after reading Miranda rights, we brought you to the court first, where I gave you the opportunity to speak with the bail clerk. From that point, she directed me to bring you to the Cheshire HO -- excuse me -- Cheshire HOC, which I -- if I remember correctly, I filled you in on that exact process, and then I provided you with the cover sheet and the signed sheet of the arrest warrant. And then I gave you the -- my name, my badge number, and the exact case number so that you could request discovery and obtain all the documents and all elements of the investigation which had I access to, sir.

Q We have a federal law that says when I ask for it, you need to provide it. So what you're telling me and you're telling the people behind me is you're going to -- you're -- you're trying to charge by information, and you're trying to



prosecute me as a witness when you weren't actually a witness to anything.

THE COURT: Is this as to the issue about the email for the bail revocation or the underlying arrest? Because --

MR. COLLIER: For the email (sic) revocation because you keep -- you keep denying the -- the other one. So let's go with -- let's go with the email.

THE COURT: Okay. And so your question about the email is -- say that again -- about him -- whether or not he witnessed something?

MR. COLLIER: Yeah.

BY MR. COLLIER:

Q Did you actually witness a crime? And who is the actual injured party? Where is the injury to the victim?

THE COURT: So two questions. Did you witness this email being sent, Trooper?

THE WITNESS: I did not witness you send the email, sir.

THE COURT: Okay. And then who was the injured party with respect to this issue about sending the email?

THE WITNESS: There were no physical injuries reported by any party in this matter, sir.

THE COURT: Follow-up question or next question, Randall.

MR. COLLIER: Well, then we don't meet the elements



of a crime in this noncriminal court. I move to dismiss. He violated the Constitution by arresting me in a unconstitutional statute.

You just testified there was no victim. You didn't witness anything.

You ain't got no jurisdiction.

THE COURT: All right. Randall?

MR. COLLIER: Especially with that administrative flag here.

THE COURT: Randall, I'll stop you right there.

Any redirect from the State?

MR. THIVIERGE: Yes, Your Honor. Thank you.

THE COURT: Go ahead.

MR. THIVIERGE: So I want to apologize to everyone for not introducing the trooper and exploring his background and employment with the state police.

If you will allow me right now, Your Honor, to do that.

THE COURT: A couple questions.

MR. THIVIERGE: All right. Okay. Pardon?

THE COURT: A couple questions, Counsel.

MR. THIVIERGE: Thank you.

REDIRECT EXAMINATION

BY MR. THIVIERGE:

Q How are you employed?

A   I'm employed through the Division of State Police as a sworn trooper out of New Hampshire State Police Troop C, sir.

Q   And how long have you been so employed?

A   A little bit over three years, sir.  Since about May 2022.

Q   Thank you.  How are you aware of the two current protective orders that were issued against Mr. Collier?

A   I was sent those orders through Hillary Merritt, which I verified through our state police dispatch that they have those on file, sir.

Q   Okay.

MR. THIVIERGE:  And I have nothing further, Your Honor.

THE COURT:  Okay.

Randall, just with respect to those questions, because that asks some additional questions of the trooper, do you have any last questions based on what he just asked?  So nothing new, but just based on that.  If you don't have any, that's fine.

MR. COLLIER:  I got -- I got -- I have two last questions.

THE COURT:  Sure.

RECROSS-EXAMINATION

BY MR. COLLIER:

Q   Tpr. Bergeron, are you getting paid today to testify



for the State?

A  I'm getting paid to carry out my duties as a sworn trooper for the New Hampshire State Police, to include being here today, sir.

Q  And what are you getting paid to be here to testify today?

A  I am being paid to carry out my sworn duties, to include providing any testimony of me that is directed by the Court, yourself, or our prosecutor, sir.

Q  What is the State paying you to testify today?

MR. THIVIERGE:  I'm going to object, Your Honor. There's no relevance to what his pay is, and it's -- he's not entitled to that information.

MR. COLLIER:  Of course I am.

THE COURT:  I'm going to ask a clarifying --

MR. COLLIER:  He -- he's a -- he's a state employee, and he's testifying on behalf of the State.

THE COURT:  Randall, so I'm going to ask a clarifying question to get at what you're trying to get at.

Trooper, are you paying -- are you being paid anything additional to testify here today?

THE WITNESS:  No, Your Honor.

THE COURT:  All right.  So you are being paid your -- what you would on a daily salary if you were stopping cars or being here; is that accurate?



THE WITNESS: Yes, Your Honor.

THE COURT: Okay. And so I'm going to leave it at that . In terms of his exact money that he's being paid, I'm going to find that not to be relevant. But that's his testimony. So continue, Randall.

MR. COLLIER: All right.

BY MR. COLLIER:

Q As a defender of the Constitution that you -- you swore an oath to uphold, would you agree that the State of New Hampshire is trying to charge me for a crime without a victim, without an injury, in a noncriminal court, and rules of evidence did not apply to the protective order?

THE COURT: I'm going to stop you right there.

BY MR. COLLIER:

Q Would you agree?

THE COURT: I'm going to stop you right there, Randall. It calls for a legal conclusion. I'll let you make those legal arguments afterwards. So with that, I'm going to not permit you to ask any other fact questions about what he witnessed or didn't witness with regards to the violation of the bail, because that's the thing that I have to make a decision on, whether or not you violated that data. And I'll permit you to make arguments of why it shouldn't even exist to begin with. But just on his investigation with respect to the email, I'll give you another opportunity. One more question.



BY MR. COLLIER:

Q So it's your testimony, Tpr. Bergeron, that you did not violate the Constitution in your -- in your contract to uphold the Constitution by arresting me on a statute -- on a New Hampshire criminal statute that's not in the criminal code?

THE COURT: Did you do your lawful duty under the Constitution?

THE WITNESS: Yes, Your Honor.

THE COURT: Okay. All right. Thank you. Trooper, you're all set.

THE WITNESS: Thank you.

THE COURT: No further questions.

Next witness, Counsel?

MR. THIVIERGE: No further witnesses.

STATE RESTS

THE COURT: Okay.

That's your document, sir.

MR. COLLIER: Oh, yeah. Thanks. Sorry about that.

THE COURT: So the State rests, Randall. So at this point in time, you have an opportunity. You could testify. If you testify, it would be under oath, subject to questioning by the prosecutor.

MR. COLLIER: Point of order.

THE COURT: Yeah, of course. Let me finish first.



Let me give your options, and then you can ask -- so hold that one word. So you can do that, or you can decide to remain silent and not testify. If you decide not to testify about the underlying violation of the bail condition, I'm still going to permit you to make legal arguments afterwards. So I'm just asking if you want to be a witness or if you have any witnesses that you'd like to present in this bail revocation hearing.

And you said, "point of order", and I interrupted you. So go ahead.

MR. COLLIER: Yeah. I just lost my train of thought.

THE COURT: I think I was talking about whether or not you testify, and you'd be subject to questioning.

MR. COLLIER: Yeah, no, I know -- my brain was somewhere else when you said that. So I guess, what do you want to do now? Because apparently, you -- you still haven't said how you gained jurisdiction, but you -- oh, yeah. So point of order. You said something about being under oath. Yeah, well, the point is, this isn't a court of law or a record, so it doesn't matter. It's not a Constitutional court. I invoked common law jurisdiction because you have an oath to the Constitution, which I have. I still want to see your bar cards. You lose your bar card. I still want to see the prosecutors bar card. It's still an illegal flag.



So a court proceeding, according to the courts of common law and governed by its rules and principles, are contrasted with a court of equity statutory. That means this is not a court of law. So you can't charge me with a crime that's not in the crime book when we're not in a court of law.

Furthermore, RSA-173 is in Title 42. It's not in Title 18. So it's not even a crime.

THE COURT: Okay.

MR. COLLIER: So you still have to answer, what jurisdiction do you think you have to charge me? Because unless you're going to do it with common law and we have a grand jury by indictment, you cannot charge by way of information. That would be unconstitutional and a violation across the board. So ball's in your court. You have to prove to me you actually have lawful, legal, constitutional, common law jurisdiction to order any orders against me.

THE COURT: So Randall, going back to my earlier question. So there is a motion to revoke bail. In the beginning of the hearing, I asked if you had seen that. The allegation on the revocation is you were issued bail conditions that you have no contact, direct or indirect, through third party with Hillary Merritt, and shall not come within 300 feet of where she may be. And the State alleges on July 2nd that you sent an email correspondence to her and her attorney, with the subject line stating: I won't stop, and

the body of the email stating, why do the judges want immunity, Hillary? What did they do so wrong? And they all want immunity. Can I get arrested, please? The State is alleging that that violated your condition of bail.

I want to give you an opportunity -- and if you don't want to, that's fine. If you wanted to testify as to those facts, or you also have a right to remain silent, or if you had any witnesses to refute that, or in your defense, you could present it. And I just want to establish whether or not you wish to present any evidence as to that allegation that you've breached your bail. And when I say "oath", I'm asking you to promise to tell the truth, subject to the pains and penalties of perjury. That's what under oath would mean in this context.

MR. COLLIER: Right. But -- but perjury doesn't get prosecuted from circuit court. So stop the shenanigans. This is not a court of law, so the oath doesn't matter. Judge Lombardi, Judge Gardner, Judge Greenhalgh, they all said it. Chairman Lynn said preponderance of evidence can only come from a criminal court. So preponderance of evidence cannot be the standard of proof in family court if it's a state court, which means it has to be proved beyond a reasonable doubt. You can't lessen the burden of proof. You can't shift the burden of proof.

Furthermore, hm, that's weird. Judge Gardner said



on 4/24: Such orders are civil, not criminal. There is no right to a trial by jury. Rules of evidence do not apply, and the standard of proof is preponderance of evidence, rather than proof beyond a reasonable doubt. That's crazy.

All right. Let's get into the -- let's get into the protective order to show how corrupt this really is.

THE COURT: Randall, are you making a legal argument? Or did you want to present a --

MR. COLLIER: Yep, I'm -- I'm going to make a legal argument for the protective order.

THE COURT: So you don't want to present any testimony and no witnesses? Is that correct?

MR. COLLIER: I am my witness.

THE COURT: Do you wish to testify, subject to questioning? Or do you just want to make legal arguments?

MR. COLLIER: Well, I'm going to testify and give you legal arguments that the Court doesn't have jurisdiction, so.

THE COURT: All right. So do you want me to put you under oath? And then I'm going to have the prosecutor have an opportunity to ask you any questions. Or do you just want to make your legal arguments?

MR. COLLIER: I'm just going to make my legal argument.

THE COURT: Okay.



34

MR. COLLIER: Because this isn't a court of law.

THE COURT: Go ahead. Yeah. Go for it.

DEFENDANT'S CLOSING ARGUMENT

MR. COLLIER: All right. Legal argument.

Are you guys ready for this?

THE COURT: Yeah.

MR. COLLIER: Sorry, guys.

THE COURT: No, Randall, just let me know what your argument is.

MR. COLLIER: All right. So my argument is New Hampshire Criminal Code 64 -- 634:4, criminal threatening, and also 644:4 for harassment. Section (e) says: With the purpose to annoy or alarm others, communicate in any manner containing any threat to kidnap any person or to commit a violation of 633 or a threat to life or safety of another. All right. So that says: With the purpose to annoy or alarm others, communicate any matter containing any threat to kidnap. That's at 644:4. All right.

So it says that you have to meet 633:4 for the threat of life to kidnap. So 633:4 RSA unconstitutional state statute says: A person will be guilty of a misdemeanor if such person knowingly takes, entices away, or detains or conceals any person child under the 18, or causes any such child to be taken away, enticed, detained, concealed with the intent to detain or conceal such child from a from parent.



THE COURT: Randall, can I stop you? Can you tell me how that's relevant? Because I'm not tracking --

MR. COLLIER: Yeah. So --

THE COURT: -- on the email that was sent in the violation of bail condition. Yeah.

MR. COLLIER: So the -- the -- the revocation of the bail on the unconstitutional warrant from the judge that didn't have the -- an oath on file.

THE COURT: Okay.

MR. COLLIER: Right? So that's all against federal law. So that's -- that automatically dismisses this case. Furthermore, the protective order that I allegedly violated, right, allegedly I had criminal threatening without an actual criminal threat. That's weird, because Supreme Court laws v. U.S. cited -- says it has to be credible and violent. So for 13 years, there's never been any credible intent to violent -- to target the targeted person to begin with.

So I have to meet -- in order to meet 644:4, I have to meet 633:4. Would you like to see this? Do you understand -- do you understand the criminal code?

THE COURT: I will take judicial notice of that statute.

MR. COLLIER: Okay. Judicial notice.

THE COURT: Yeah.

MR. COLLIER: Okay. So Judge Gardner says -- are



you ready for this -- despite the rambling nature of the text messages and their increasingly disjointed phrasing, there are no concrete threats from Mr. Collier either towards the mother or the -- or our son. I'm not going to say his name, because people.

THE COURT: No, I understand.

MR. COLLIER: Nor do the text messages contain any specific inferences that Mr. Collier intends to take him away from -- from the mother or take him into the woods. So I certainly can't meet 644:4 if I can't meet 633:4. And I can't have criminal harassment if there was no phone records ever submitted.

THE COURT: What was the date of that order, Randall, that you read from the judge? Is that the 2013 case, or when is that?

MR. COLLIER: Yeah. This is -- this is 1/27/13.

THE COURT: Okay.

MR. COLLIER: So that was four days before they issued the protective order. And then on the protective order, the judge wrote -- Judge Carroll wrote -- where -- where the -- where it says specifically what happened, he said: See order. So the State put in a spot on the -- on the document for the judge to write specifically what happened to meet the criteria of the criminal statutes in the noncriminal court. And he wrote: See order.

eScribers

So the mother said I was texting at all hours of the night. And I got criminal harassment without the actual phone records. Imagine that?

THE COURT: Sir? Sir?

MR. COLLIER: Criminal harassment without the phone record.

THE COURT: Sir? Sir, I'm the one that needs to hear from you.

MR. COLLIER: So I know, but I'm wasting their time.

THE COURT: So continue.

MR. COLLIER: We're wasting their time because of this unconstitutional executive branch trying to incriminate me in a noncriminal court.

THE COURT: Continue and conclude.

MR. COLLIER: So -- so the conclusion is I never met the criteria for any of the protective orders because A, it's not a court of law, not a court of record, not a criminal court, not an executive branch court, and Judge Gardner even wrote that there was no inferences for me to take him away. So I can't meet 633:4 to meet 644:4. And if there's no -- if there's no actual criminal threat that I actually did, how did I meet the elements of criminal harassment and criminal threatening without any elements?

So that means the protective order was based on fraud, fruit of the poison tree. Chairman Lynn just said on



3/25, the preponderance of evidence can only come from a criminal court. And Judge Gardner wrote on 4/24, oh, wait, it's the standard of proof. Imagine that. So Chairman Lynn of the House Judiciary, retired supreme court justice, directly contradicted Judge Gardner's order. That nullifies everything.

THE COURT: So I'm tracking your argument. The underlying arrest for the -- that gave you the bail conditions, you're saying that that was unlawful for a number of reasons. The protective order from 2013, you're saying that that issue was unlawful.

MR. COLLIER: Furthermore -- furthermore --

THE COURT: Is that correct so far?

MR. COLLIER: So far, yeah, absolutely. But let's just -- let's -- let's just point out a very lawful -- it's an unlawful act by the mother.

THE COURT: Go ahead.

MR. COLLIER: So on 3/25, she moved -- the -- the -- the State --

THE COURT: This year?

MR. COLLIER: Yeah, the -- of this year.

THE COURT: Yeah.

MR. COLLIER: The -- the State allowed her to move to North Carolina 10 years ago, right? She stopped all phone conversations, against her parenting plan, four years ago.



Almost four years ago. I haven't talked to my kid in almost four years, right? Okay. So that's illegal. How can it be the child's best interest to move them several hundred miles away? Hold on.

THE COURT: Yeah.

MR. COLLIER: Hold on. The mother, history of violent and violent tendencies? Yes. History of drug abuse? Yes.

THE COURT: Is that from 2000 --

MR. COLLIER: That's -- that's aggravated perjury on legal documents from the mother to implement this next five-year protective order, which makes 17 years protective order, which is a violation of every federal right there is, because if rules of evidence didn't apply to the protective orders in a noncriminal court, what did apply? And all I got was immunity.

THE COURT: All right.

MR. COLLIER: So again, the mother, aggravated perjury. If there was drug abuse, right, for instance, I wouldn't have a job, right? Because my -- my addiction, my illness would perpetuate me going to get that drug and not going to work. Well, if she got child support for the last fucking nine years, then how is that drug abuse? And how is it violent tendencies if rules of evidence didn't apply to criminal statutes in a noncriminal court? Because if there

was a crime and there was an injured party and there was a victim, we would be upstairs in a real courtroom.

THE COURT: Okay. One last --

MR. COLLIER: Motion dismissed.

THE COURT: One last thing. Do you want to make any argument about this email, State's Exhibit 1? If you don't want to make any argument, you don't have to.

MR. COLLIER: It's not an affidavit. It's not true.

THE COURT: All right. Thank you.

MR. COLLIER: Because I don't know. I'm not a computer guy, but I know my nephews are. And they can do all kinds of crazy shit on the computer.

THE COURT: Okay.

MR. COLLIER: And I know people can send shit back and forth. And I've seen people play on my computer, and I sit back and watch them. You can't prove that I did that.

THE COURT: Okay. All right. Thank you.

Counsel, closing argument?

STATE'S CLOSING ARGUMENT

MR. THIVIERGE: Thank you, Your Honor. It appears, from Mr. Collier's argument, that it essentially -- it seems to me, and I could be wrong -- that it's -- it's a -- it is a motion to dismiss. And it sounds like he wants to dismiss the criminal case which produced the criminal bail order, which we are alleging was violated. It also sounds like a collateral



attack of some sort against the original 173-B finding in 2013, and the subsequent ones that have now been extended to 2025, Your Honor. Which, I don't think this is the forum for it.

MR. COLLIER: Objection.

THE COURT: Oh, no, it's just argument at this point.

Go ahead.

MR. THIVIERGE: Yeah. The trooper did testify to the one July 2, 2025 email. And also testified that there were subsequent ones that he has received. If we can believe that this Randall Collier is this Randall Collier, he puts in the subject, I won't stop. And I think he's been true to his word. He hasn't stopped. He continues. And it doesn't sound like he thinks there's any legal way to stop him. So --

MR. COLLIER: Point of order?

THE COURT: Oh. One moment. I'm just going to have him make his argument, because you made your argument.

MR. THIVIERGE: Thank you.

THE COURT: Go ahead.

MR. THIVIERGE: So I guess the bottom line for me is that he's never really objected to our motion other than a blanket unconstitutionality of our court's -- of the Court, court system. At least the circuit court system.

THE COURT: What are you -- what is the State asking



for?

MR. THIVIERGE: Your Honor, we would -- he's out on personal recognizance right now. We would ask that that be revoked. We would ask for 1,000 dollars cash. Because this is an ongoing event. It's not a one and done, oops, I second email that I shouldn't have. There's a course of conduct? It's designed, one, if not to harass a protected party, it's designed to violate what he calls unconstitutional orders.

MR. COLLIER: Point of order.

THE COURT: I'll come back to -- I'll give you a opportunity for rebuttal, Randall.

Continue, Counsel.

MR. THIVIERGE: Thank you, Your Honor. So I mean, he's just -- it's just an ongoing opportunity for him to continue to violate the 173 order, the criminal bail order. And Your Honor, we -- she needs to be protected, and he needs to be held to account for what those orders say. And he doesn't -- apparently does not -- it's not apparent -- it's apparent. He's said it. He doesn't believe in the orders. He doesn't believe in the authority of the Court. So we have to stop it somehow, Your Honor. And we believe that revoking bail and setting cash bail at 1,000 dollars would be an appropriate way of doing that.

THE COURT: Okay. Does he have a prior record pertinent to the issue of bail?



MR. THIVIERGE: As far as a criminal record, I --

MR. COLLIER: No record.

THE COURT: One moment, Randall. I'll give you an opportunity for that.

MR. THIVIERGE: I'm unsure if he does, Your Honor. I don't have anything that reflects that he does.

THE COURT: All right. And anything further from the State?

MR. THIVIERGE: Nothing, Your Honor. Thank you.

THE COURT: All right.

Randall, at this point in time, I'll give you an opportunity for rebuttal. And let me just explain where we are in the process. The State is asking for the Court to find that you violated your bail conditions, revoke your personal recognizance bail, and set bail at 1,000 dollars cash, subject to the same conditions of no contact. I'm going to give you an opportunity to respond to that request.

MR. COLLIER: Now?

THE COURT: Yes.

DEFENDANT'S REBUTTAL ARGUMENT

MR. COLLIER: Well, again, you have not proven lawful jurisdiction in this administrative court with the illegal flag. The trooper testified that there was no crime, there was no victim, and he didn't witness anything. So there goes the three elements to a crime. This isn't a criminal

eScribers

court. And my objection -- and to dismiss this case and to remove the protective order and return my son immediately today, my objection to the State's motion to revoke bail, looks like you have about 35 federal questions that you have to answer before you try and put any order against me, such as all your conflicts of interest. I still have to see your bar card as a state bar member. I still have to see the prosecutor's bar member card. You haven't -- you haven't presented that to me yet.

Well, the State can only contract with other corporations. And since I'm not a corporation, I'm a living man, you can't contract with me. So that'd be illegal. And the prosecutor says that I won't stop, and something about the law. Well, that's weird. If family court is not a court of law, then how would I be in contempt of a court order if the order isn't lawful? Huh. That's amazing.

So since this -- the beginning of this case and the six extensions of the protective order when evidence didn't apply, I'm still trying to figure out why the prosecutor for the State is trying to charge me with a crime when the judge that implemented the protective order said evidence didn't apply. So how did evidence didn't apply to a criminal statute protective order in a noncriminal court? It certainly can't be a crime to violate something if it's not in the crime book.

So we -- we have the testimony from a state house of



all the judiciary. And you've read my objection. I'm sure the prosecutor read my objection. But for the people here, so they understand, everybody listening, the State of New Hampshire testified at the House of Representatives: We automatically lose our rights in civil court, but our rights are protected in criminal court. And then when you have a complaint against a family court judge, they send you to the Judicial Conduct Committee, which is a committee by the Supreme Court. Which, I have the letter from the Judicial Conduct Committee that says they can't hear family law complaints.

So why doesn't New Hampshire judiciary implement criminal statute in a noncriminal court without evidence? Why does the New Hampshire judiciary intentionally mislead us? Why do we lose our rights in state court as a veteran and a citizen of the state? And to this point, the State has refused to show a victim or an injured party or anything that they witnessed.

So furthermore, if the judge said that I couldn't meet 631:4 to meet 633:4, I certainly can't meet 644:4. In Watts v. U.S., it says the threat has to be credible, violent to the targeted person. And in 13 years, there has never been any attempt to harm the mother or my child. So for her to write violent tendencies and drug abuse, I motion for this Court to refer that Ms. Merritt May to Superior Court upstairs



for aggravated perjury and child abuse, child endangerment, and for this Court to dismiss the revocation of the bail. Because there is no crime, there is no victim, there is no witness, there is no injured party. And 173-B is not in the New Hampshire Criminal Code Chapter 62 or U.S. Code Title 18. And family court is not a court of law. And that flag is illegal because that's not a constitutional flag.

THE COURT: Thank you, Randall.

MR. COLLIER: I motion to dismiss the revocation, dismiss the protective order, and return full custody to my son immediately today, based on all the fraud the State has -- has compiled. I mean, the evidence is against the State. There's no evidence against me because you still haven't actually brought anything against me for an actual crime with a victim, injured party, mens rea, actus reus, corpus delicti. You haven't proven lawful common law jurisdiction to order any against -- orders against me.

I haven't seen your bar card. And I haven't seen a prosecutor's bar card. So until that happens, you -- you've got to prove your case. You've got to show me your bar card, which means a conflict of interest. You have multiple questions of conflict of interest that I -- that I gave you on my objection that you haven't answered yet. Conflict of interest. Numerous constitutional violations. I ask this Court to clarify a federal, state, and local officials may



violate their oath of office and can continue to serve in office and openly violating the Constitution. They swore an oath to protect and defend under 5 U.S.C. 3331.

THE COURT: Thank you, Randall.

COURT'S RULING

THE COURT: Randall, your request to dismiss is denied. I'm granting the State's motion to revoke your bail.

MR. COLLIER: On what grounds?

THE COURT: Let me finish. I find that you were issued a valid bail order, and that on or about July 2nd of this year, you sent the protected party an email titled, I won't stop. Why do the judges want immunity, Hillary? Why do they do so wrong when they all want immunity? Can I get arrested again, please?

MR. COLLIER: You just said it wasn't an affidavit.

THE COURT: No, I'm not finished. I'm not finished.

So I find that the State has met its burden to show a violation of the bail order. And I find that personal recognizance subject to the conditions is insufficient. And so I'm granting the State's request that bail be instituted at 1,000 dollars cash.

You're going to be taken into custody. As soon you can post that cash, then you can be released. You're subject to important bail conditions, Randall, and I'm going to review them. You're to have no contact with the protected party,



direct or indirect, with Hillary Merritt, or through third parties, not come within 300 feet where she may be. No contact whatsoever. I'm going to order that you not possess a firearm, destructive device, dangerous weapon, or ammunition, and refrain from any use of alcohol.

MR. COLLIER: Refrain from use of what?

THE COURT: Any use of alcohol.

MR. COLLIER: Oh. Yeah. I don't drink.

THE COURT: All right.

MR. COLLIER: So my question to --

THE COURT: Sir, sir, I'm remanding you into the custody of the sheriff. Your bail is revoked. 1,000 dollars cash.

MR. COLLIER: Habeas corpus.

THE COURT: That concludes the hearing.

MR. COLLIER: Right now? This is another unlawful unconstitutional because the judge is denying common law jurisdiction and arresting me. And what's it, Dodson and Shanks (phonetic)? Dodson and Shanks.

THE BAILIFF: Right up here.

MR. COLLIER: Unconstitutional arrest. I need -- I need my papers.

THE BAILIFF: We're going to get all that stuff for you, sir.

MR. COLLIER: I don't trust you.



Thanks, guys. Thanks for showing up.

(Proceedings concluded at 8:46 a.m.)



# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

Cheshire County

8th Circuit - District Division - Keene

## State v. Randall Collier

**449-2025-CR-00776**
**&**
**449-2025-CR-01147**

### ORDER ON BAIL REVOCATION

This matter came before the Court on July 24, 2025 for the State's Motion to Revoke Bail (*Index 10*). The State's interests were represented by Attorney Dennis Thivierge, New Hampshire State Police. The Defendant, Randall Collier, addressed as "Randall," with his permission and request, appeared *pro se*. The State requested to proceed by offers of proof. The Defendant objected on numerous grounds citing the constitutionality of the Court and proceedings. The Court denied the State's request and directed Prosecutor to put on sworn testimony subject to cross-examination. The Court finds that it has jurisdiction over the Defendant and the offenses. A recording was made of this hearing.

After having considered the Trooper's sworn testimony subject to the Defendant's opportunity for cross-examination, exhibit 1, applicable law, and appropriate weight to be afforded to the same – while also carefully weighing the witness's credibility, to include potential biases and/or motives, character and temperament, the Court found that the State met its burden for bail revocation, finding by probable cause that the Defendant violated his bail in the matter, by sending the protected party an email on or about July 2, 2025, stating:

> Subject Line: I wont stop
>
> Why do judges want immunity, Hillary.? What did they do so wrong that they all want immunity.? Can I get arrested again please…

The Court further found that absent cash bail, that the Defendant was unlikely to abide by any condition or combination of conditions of release.

The State requested that the Defendant's personal recognizance be revoked and that bail be set at $1,000.00 cash. When inquired by the Court, the Prosecutor indicated that the Defendant does not have a criminal record. The Prosecutor provided no further evidence as to potential dangerousness and did not request preventive detention. The Defendant challenged the validity of this Court, the prior bail order, and civil protective order.

1

The Court adopted the State's recommendation and ordered the Defendant into the custody of the Sheriff pending his posting of $1,000.00 cash bail. The Court re-addressed bail conditions with the Defendant and ordered him, in part, **not to have any contact with the protected party.**

### Arraignment on State v. Randall Collier, 449-2025-CR-01147

The Court was unable to bring back the Defendant for his arraignment on new complaints submitted to the Court today for an arraignment. The Defendant was not arrested on these complaints and no *Gerstein* or arrest warrant was provided. A review of the complaints demonstrates that the allegations are identical to the prohibited email contact that was testified to at today's bail revocation hearing.

The Court continues the Defendant's arraignment on these new complaints to the same day and time of his 449-2025-CR-00776 trial on **Wednesday August 13, 2025 at 8:30 A.M..**

So Ordered.

July 24, 2025
Date

Judge Joseph D. Tessier

()

2

STATE OF NEW HAMPSHIRE

CHESHIRE COUNTY                    8th CIRCUIT-DISTRICT DIVISION - KEENE

STATE OF NEW HAMPSHIRE

v.

RANDALL COLLIER
Case No.: 449-2025-CR-00776

## DEFENDANT'S MOTION TO RECONSIDER AND REVERSE COURT'S FINDING OF GUILT

**NOW COMES**, Randall Collier, the Defendant in this matter, through Undersigned Counsel, and hereby moves this Honorable Court to reconsider and reverse its finding of "guilt" and dismiss the matter with prejudice, for the reasons set forth below:

### BRIEF RECITATION OF ESSENTIAL FACTS

1. This matter stems from underlying actions between the Defendant, Mr. Collier and the alleged victim, Ms. Merritt dating back to 2013. See Docket Nos. 650-2013-DM-00010; 650-2013-DV-00016.

2. Of some relevance, to date the parties (Mr. Collier and Ms. Merrit) remain subject to [superseding] parenting orders, proscribing telephonic and video contact based on the best interests of the child. See Fichtner v. Pittsley, 146 N.H. 512, 514 (2001) (protective orders cannot supersede parenting orders issued under RSA 458).

3. On March 4, 2025, Ms. Merrit reported to State Police that Mr. Collier had violated "a protective order that originally issued a number of years ago" by e-mailing her. August 13, 2024 Trial Transcript, pg. 29[1]. See State's Exhibit(s) (herafter "Ex.") 1-2. As evidence, she provided a number of e-mails sent to her and her attorney by Mr. Collier, dated between December 11, 2024 to February 20, 2025. See State's Ex. 4-9.

4. Trooper Bergeron testified that he confirmed that the Court issued a five year stalking order on April 2, 2025, valid through April 2030. T30. See State's Ex. 3. Trooper Bergeron arrested Mr. Collier on May 23, 2025. T32.

5. Mr. Collier was subsequently charged with one count (charge ID no. 2325252c) of Violation of Protective Order, a class A misdemeanor, contrary to RSA 173-B:9.

6. The above referenced charge alleged that on or about March 4, 2025 at 1:00p.m. "[Mr. Collier]...knowingly violated a protective order issued by 4th District-Laconia Court on 2/21/2013 and having been continuously extended[,] currently set to expire on 2/28/2030 by contacting the protected party... by electronic means."

7. On or about August 13, 2025, Trial was held in the above captioned matter before Hon. Judge Patrick Ryan in 8th Circuit - District Division - Keene District Court.

8. At trial, and in furtherance of its contention that Mr. Collier had violated the Court Order at issue, the State presented electronic communications reflecting communications addressed to a number of individuals including Ms. Merritt and her attorney, dated between December 2024

---

[1] Cited hereafter as "T." E.g., "T1" would refer to page 1 of said transcript.

and February 2025, and testimonial evidence from Ms. Merritt about the same. T77-85. State's Ex. 4-9.

9. At trial, the State presented and entered as evidence in support of the existence of the court order violated: (1) a stalking order (Carroll, J.) issued February 4, 2013, valid through February 2014, and (2) a stalking order issued April 2, 2025, valid through April 2030. T75. The State did not present any other court orders.

10. The Orders submitted by the State were issued pursuant to RSA 633:3-a, III. None of the State's submitted Orders were issued under the authority of RSA 173-B:9, 458:16, or the laws of another State.

11. Consistent with this motion for reconsideration, and to the extent as may be reasonably expected of a *pro se* litigant, Mr. Collier made timely objections to the evidence and moved to dismiss the proceedings based on his constitutional rights and congruent with the statutory parameters of RSA 633:3-a. U.S. Const. Amend. V; N.H. Const. pt. 1, art. 15.

12. The Court took the matter under advisement and on or about August 25, 2025, the Court issued a written opinion finding Mr. Collier guilty and Ordering the matter be set for a sentencing date, which has subsequently been scheduled for October 22, 2025. See generally Hon. Judge Patrick Ryan's August 13, 2025 Orders on Motions and Findings After Trial (hereafter the "Decision").

## LEGAL ARGUMENT

**POINT ONE: NOTWITHSTANDING THE TIMING REQUIREMENTS OF A MOTION TO RECONSIDER, IT IS PROPER THAT THE COURT CONSIDER THE INSTANT MOTION.**

13. Motions for reconsideration are permitted by Rule 43 of the New Hampshire Rules for Criminal Procedure. Said rule states in relevant part that such motions "shall state, with particular clarity, points of law, or fact that the Court has overlooked or misapprehended, and shall contain such argument in support of the motion as the movant desires to present..." R. 43.

14. It is without question that the Rule also states that such motions must be filed within 10 days of the clerk's written notice on the Order or Decision. Id. However, no machination of man is perfect and so our Court's wisely include R. 37(a) for situations such as these, prescribing that "...when allowed by law and as [J]ustice may require, the Court may waive the application of any rule. R 37(a)(emphasis added).

15. It does not go without appreciation as to why the filing deadlines for motions such as these are strictly enforced as a general practice. To permit second bites at the metaphorical apple without any guardrails would put an unacceptable burden upon the limited resources of the Court. However, in cases such as this, suspension of the strictures of filing deadlines is in the interest of Justice and required by the law insofar as the law demands correct application of itself.

16. In this case, the delay in filing is driven by the fact that a *pro se* litigant has endeavored to engage with the Court system despite lacking the familiarities that would ordinarily accompany him if he himself were admitted to the bar or aided by one who was.

17. It is well after the Court's Order that he manages to obtain legal counsel, something which is far too often a challenge for citizens of this State, and only then is the error discovered that ought to have prevented his conviction but for Mr. Collier's lack of counsel at the prior trial.

18. As set forth below in fuller detail, the asserted error here is that the State failed to prove the existence of an appropriate order for which Mr. Collier was found guilty of violating.

19. In short, is appropriate and Just to consider the issues now presented and, respectfully reverse the Court's finding of guilty, as to do otherwise results in Mr. Collier's sentencing and potential loss of fundamental liberty for an offense which, for the reasons set forth herein, could not have been proven as charged.

20. Accordingly, it is respectfully submitted that it is only proper that this Court suspend the filing deadline of R. 43 and consider Mr. Collier's instant motion.

**POINT TWO: THE FINDING OF GUILT WAS IN ERROR BECAUSE AS A MATTER OF LAW, DEFENDANT CANNOT BE GUILTY OF THE OFFENSE CHARGED. (DECISION PP. 175-178)**

21. Despite the Orders entered into evidence, it is *per se* the case that Mr. Collier cannot be guilty of the offense charged. The complaint alleges that Mr. Collier committed the crime of Violation of Protective Order, contrary to RSA 173-B:9.

22. Said statute commands, in relevant part, that: "...Any person shall be guilty of a Class A misdemeanor if such person knowingly violates a protective order issued under [RSA 173-B:1 *et seq.*], RSA 458:16, III, or any foreign protective order enforceable under the laws of this

State. <u>See</u> RSA 173-B:9, III. In order to be found guilty of such offense, the State must prove beyond a reasonable doubt that:

1. The defendant was subject to a temporary or permanent protective order issued under the authority of RSA 173-B[, RSA 458:16, or the law of another state] and;

2. The defendant violated the Order; and

3. The defendant acted knowingly.

[<u>See</u> NH Criminal Jury Instructions (drafting committee)(2010), p. 48; RSA 173-B:9, III.]

23. In fact with this, there is no disagreement found within the Decision as the Court correctly identifies the same required elements. <u>See</u> Decision, p. 178.

24. However the issue here is that the State produced absolutely <u>no evidence</u> of any protective order issued pursuant to RSA 173-B:9, RSA 458:16, or the law of another State.

25. Rather, in its case-in-chief, the only protective Orders produced by the State are Orders which were issued pursuant to RSA 633:3-a.

26. A similar situation arose in <u>State v. Simone</u>, 151 N.H. 328 (2004). In that case, the victim, a field representative for the U.S. Census Bureau obtained a restraining Order against the defendant on the basis of the equitable powers of the New Hampshire Superior Court after the defendant had made unwanted telephone calls to her for several months after the termination of her official contact with him. Subsequently, the defendant contacted her several more times and was consequently charged with and ultimately convicted of stalking contrary to RSA 633:3-a, I(c).

27. The defendant objected and later appealed to the New Hampshire Supreme Court, argued that the Trial Court erred in denying his motion to dismiss the stalking charge(s) because an element of the crime of stalking, i.e. the violation of an Order issued pursuant to RSA 633:3-a, was not satisfied.

28. The <u>Simmons</u> Court agreed and ultimately reversed the defendant's conviction(s).

29. In its analysis, the Court declined to add any words the legislature did not include in the stalking statute, and held that in "order for a violation of a protective order to serve as a basis for a stalking conviction under RSA 633:3-a, I(c), the order must indicate it is issued pursuant to one of the four enumerated provisions of the statute." <u>Simmons</u>, 151 at 330.

30. The Court rejected the State's arguments that the restraining Order at issue was issued pursuant to RSA 633:3-a, III-a, and found that the restraining Order had been issued under the Superior Court's equitable powers. <u>Id</u>. at 331 (reversing on the basis that the final restraining order was not issued pursuant to one of the four provisions specifically enumerated in RSA 633:3-a, I(c)).

31. Similar to the case in <u>Simmons</u>, the Court should reverse the defendant's guilty finding here.

32. As set forth above, the language of and the State's burden under RSA 173-B:9 is clear, the Defendant must have been subject to an Order issued under the authority of that statute, RSA 458:16, or that of another State's laws.

33. Here, no such Order was ever entered into evidence. Rather, the State entered evidence of two orders (neither of which were in effect at the time of the alleged offense) which were issued under the authority of 633:3-a, III-a.

34. Assuming *arguendo*, that the Defendant was charged with stalking contrary to RSA 633:3-a, the State may (although this too is unclear) have carried its burden, however, the State exercised its sole discretion to charge and charged Defendant under RSA 173-B:9, <u>See</u> Complaint, Charge Id No. 2325252c.

35. The State failed to establish that Defendant was subject to an appropriate protective order, likely an impossibility given the lack of any information otherwise indicating such an Order has ever been issued.

36. Accordingly, because the State did not satisfy its burden of establishing the material element that Defendant was subject to an appropriate protective Order, it was in error for the Court to find Mr. Collier guilty of the offense charged.

37. Accordingly, it is respectfully submitted, that the Court's finding of guilt should be reversed and the matter dismissed with prejudice.

**POINT THREE: IT WAS IN ERROR TO FAIL TO GIVE DUE WEIGHT TO THE DISCONNECT BETWEEN THE EVIDENCE PROFFERED AND THE CHARGING DOCUMENT (DECISION, PP. 178-179)**

38. As the Court correctly observes, the evidence presented by the State related to January and February of 2025, not to the charged offense date of March 4, 2025. Decision, p. 178. However, this fact was not given proper significance.

39. First, the time of the offense is of utmost importance as it is essential to the constitutionally required notice to the defendant of what is being alleged and is essential to the defendant's basic abilities to defend himself. If the State sought to charge Mr. Collier for events in February

and January of 2025, the State, as the author of the charging documents, ought to have included such events in said documents but chose not to.

40. Accordingly, the offense at issue is said to have occurred on March 4, 2025, however, and as the Court aptly notes, there was no evidence presented in support of any offense occurring on March 4, 2025.

41. Moreover, it should not save the State's case even if such evidence had been presented. State's Ex. 3, provides a recitation of the extension history testified to by Ms. Merrit at trial, which in relevant part provides: "...Order on Motion for Extension of DV Protective Order dated February 20, 2020..." State's Ex. 3.

42. In the absence of any evidence of additional Orders, this means that the next 'order of extension' is in State's Ex. 3. Meaning, that because the maximum extension provided for a protective Order under RSA 633:3-a or 173-B is 5 years, the continuum of the protective Order dated February 20, 2020 (absent any additional Orders) falls under reasonable doubt beyond February 20, 2025 as that is the day said Order would reasonably have been expected to expire. See State's Ex. 3.

43. In other words, the State's own evidence places Mr. Collier's guilt into reasonable doubt based upon the fact that they demonstrate a likely lapse of the protective order at issue during the time of the alleged offense.

44. It is therefore respectfully submitted that it was in error to have found Defendant guilty of the offense charged and it is only proper Mr. Collier's motion be granted.

## PRAYER FOR RELIEF

**WHEREFORE**, the Defendant respectfully moves this Court to:

(A)     Grant Mr. Collier's motion to reconsider, reverse the Court's finding of guilt and

dismiss the matter with prejudice; or

(B)     Hold a hearing thereon if necessary; and

(C)     Grant Mr. Collier such other relief as may be deemed proper and Just.

Date:                                                    Respectfully Submitted,


_____
Randall Collier
The Defendant

Through Counsel,


_____
Thomas M. Rogers, Esq.
P.O. Box 222
Manchester, NH 03105
trogers@rogerslegal.org
617-752-1418

## CERTIFICATE OF SERVICE

I, Thomas M. Rogers, Esq., hereby certify that I sent a copy of the Defendant's Motion to Reconsider, to Counsel of Record, this ___ day of October, 2025.


_____
Thomas M. Rogers, Esq.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

Cheshire County

8/6/25

Aug 6th 2025

8th Circuit - District Division - Keene

## State v. Randall Collier

### 449-2025-CR-00776

### ORDER ON STATE'S MOTION TO ALLOW APPEARANCE VIA WEBEX

The Defendant, Randall Collier, is charged with one count of Violation of Protective Order, contrary to RSA 173-B:9, a class A misdemeanor.[1]  The Complaint alleges that the Defendant did:

"knowingly violate a protective order issued by the 4th District-Laconia Court on 02/21/2013 and having continuously extended currently set to expire on 2/28/2030 by contacting the protected party, Hillary Merritt by electronic means,…"

Trial in this case is scheduled for August 13, 2025.

The State has filed a Motion seeking to permit Hillary Merritt's testimony by Webex.  The Motion alleges that Ms. Merritt resides "…in a state many hours' drive from New Hampshire."  In addition, the Motion argues that Ms. Merritt is a school teacher and it will be her first week of the new school year on the date of trial and would be unable to take the number of days off from work necessary to travel to New Hampshire to appear for trial.  Lastly, the State argues that it will place a financial burden upon Ms. Merritt to miss work and to travel to New Hampshire.

The Defendant objects to the Motion.  In his Objection, he makes several arguments relating to the charge itself, the authority of the Court, etc.  The Court's focus for purposes of this Order is upon the State's request that Ms. Merritt be permitted to testify by Webex.  In the body of his Objection, the Defendant does make reference to the applicable provision of the New Hampshire Constitution which is Part I, Article 15.

Per Part 1, Article 15 of the New Hampshire State Constitution, entitled "Right of Accused:"

"No subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse or furnish evidence against himself. Every subject shall have a right to produce all proofs that may be favorable to himself; *to meet the witnesses against him face to face*, and to be fully heard in his defense, by himself, and counsel. No subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land; provided that, in any proceeding to commit a person acquitted of a criminal charge by reason of insanity, due process shall require that clear and convincing evidence that the person is

w/ierd 4 Motions 4 Disc Denied. but we have to vindicate our rights-your rule vidates

---

[1] The Defendant is also charged with a second count of Violation of Protective Order as well as Breach of Bail Conditions; however, this Order relates to only one charge in docket number 449-2025-CR-00776.    your own

State Constitution!

potentially dangerous to himself or to others and that the person suffers from a mental disorder must be established. Every person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown; this right he is at liberty to waive, but only after the matter has been thoroughly explained by the court." (emphasis added)

This issue was recently addressed by the New Hampshire Supreme Court.[2] In State v. Warren, the Supreme Court overturned the Second Degree Assault conviction of the Defendant finding that the trial court's order allowing the minor victim to testify via video feed, *outside of the presence of the defendant*, violated the defendant's right to meet the witnesses against him "face to face." In that case, the defendant was accused of second degree assault against a minor victim, her daughter. The Court heard evidence during a hearing on the request to permit the alleged victim to testify via one-way feed video, that, should the minor victim be in the presence of her mother, or even see her mother, there would likely be a visceral reaction. A counselor testified that "...her sense was that if A.D. were to see her mother she would have "a really strong response," would "immediately assume that she was going back into her mother's custody," and "would both have difficulty answering questions and understanding what's being asked of her." The State's proposal would have permitted the cross-examination of the alleged victim, would be under oath and would be seen on video such that the jury would be able to assess her demeanor. The trial court "...applied the test set forth in Craig and made "particularized findings specific to" the "four essential components of confrontation" — physical presence, the witness's oath, cross-examination, and the observation of demeanor by the trier of fact."[3] The Supreme Court held that this process did <u>not</u> satisfy Part I, Article 15.

The Supreme Court acknowledged the trial court's concern for the child witness, it held that it had "...no authority to ignore the plain language of the State Constitution and override the accused's constitutional right to face-to-face confrontation."[4] The Court held: "The constitutional right to confront adverse witnesses is fundamental and of such importance that the State's interest in protecting a certain class of witnesses must fall before the right of the accused to seek out the truth in the process of defending himself."[5]

The Supreme Court ultimately held the following: "We hold that Part I, Article 15 clearly and unambiguously requires a face-to-face confrontation between the accused and the witness. Given this conclusion, we clarify that prior intimations in our case law — drawn from federal cases — that a right to direct confrontation is merely a "preference" does not comport with state law."[6] The Court distinguished Craig as applying to challenges under the Sixth Amendment to the U.S. Constitution. Here, the Court's analysis was focused upon Part I, Article 15 of the N.H. Constitution.

Based upon the recent N.H. Supreme Court decision in State v. Warren, referenced above, the Court finds that it must deny the State's request to permit the appearance/testimony of Hillary Merritt by Webex. The Court acknowledges the issues raised by the State related to the appearance of Ms.

---

[2] State v. Warren, 337 A.3d 265 (N.H. 2025).

[3] State v. Warren, 337 A.3d 265, 271 (N.H. 2025) citing Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).
[4] State v. Warren, 337 A.3d 265, 274 (N.H. 2025).
[5] State v. Warren, 337 A.3d 265, 274 (N.H. 2025).
[6] State v. Warren, 337 A.3d 265, 274 (N.H. 2025).

Merritt; however, as indicated by the N.H. Supreme Court in <u>Warren</u>, those issues must "fall" before the right of the Defendant to seek out the truth in the process of defending himself.

The Court notes that the Defendant is charged with a class A misdemeanor. He is presently unrepresented and has not applied for court-appointed counsel. The Court reminds the Defendant of his right to apply for court-appointed counsel. Should he wish to do so, he must do so immediately. Given the Court's ruling on the State's Motion, the Court would be disinclined to continue the trial date absent an exigent circumstance.

So Ordered.

August 06, 2025
Date

Signature of Judge

Patrick W. Ryan
Printed Name of Judge

()